UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CENTERFOLDS, INC. : | |
| AND MARIO PIROZZOLI, JR. : | NO.:  3:02CV2006 (WWE) |
| : | |
| v. : | |
| : | |
| TOWN OF BERLIN, BONNIE L. : | |
| THERRIEN, IDA RAGAZZI, JOANNE : | |
| WARD, JOSEPH ARESIMOWICZ AND : | |
| LINDA CIMADON : | FEBRUARY 23, 2004 |

### DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT OF UNDISPUTED FACTS

Pursuant to Fed. R. Civ. P 56(c) and Local Rule 56(a)(1), the defendants, Town of Berlin, Bonnie L. Therrien, Ida Ragazzi, Joanne Ward, Joseph Aresimowicz and Linda Cimadon hereby submit their Local Rule 56(a)(1) Statement of Undisputed Facts in support of their Motion for Summary Judgment.

**History of Enforcement Action**

1. Centerfolds operates a cabaret featuring live adult entertainment and previously obtained a license to operate a sexually oriented business establishment in accordance with Berlin's ordinance.  **Exhibit A**, Centerfolds' License to Operate A Sexually Oriented Business in the Town of Berlin.

2. Centerfolds' license requires it to comply with all requirements of Berlin's "ordinance concerning sexually oriented businesses."  **Exhibit B**, Town

of Berlin Ordinance Concerning Sexually Oriented Businesses.

    3. This ordinance provides, in Section 4(a)(1)

> No licensee, operator or employee of a sexually oriented business shall perform or permit to be performed, offer to perform, or allow patrons to perform any live performance or conduct featuring any specified sexual activities on the licensed premises.

**Exhibit B**.

    4. In the definition section, "specified sexual activities" includes "Subsection 3 - fondling or erotic touching of…. female breasts; §4 lap dancing."

In addition §5 of the ordinance provides:

> (d)    No entertainer, either before, during or after a performance, shall have physical contact with any patron of a sexually oriented business while on the licensed premises.

**Exhibit B**.

    5. Centerfolds is also regulated by the State of Connecticut Department of Consumer Protection, Liquor Control Division which has similar restrictions regarding the conduct permitted on the premises of cabarets featuring live adult entertainment. Conn. Regs State Agencies § 30-6-A24.

    6. On July 1, 2002, defendant and Town Manager Bonnie Therrien read in the newspaper that the State of Connecticut Liquor Commission was going to revoke the plaintiff's liquor permit based upon based upon the Commission's investigation which found that employees of the plaintiff's business were giving "lap dances" to customers, as well as committing other sexual activities. **Exhibit C**, Transcript of Revocation Hearing dated August 27, 2002; **Exhibit D**, Letter to

2

Ms. Ayala, Liquor Division, from Ms. Therrien dated July 14, 2001.  See also, **Exhibit V**, Affidavit of Bonnie Therrien.

7. Ms. Therrien requested a copy of the Commission's investigation and reports through the FOIA.  **Id.**

8. Ms. Therrien reviewed the Town's ordinance which provided that activities identified by the Commission investigators were prohibited by the ordinance.  **Exhibits C, V and E**, Liquor Control Division Report dated August 19, 2001.

9. As a result, she revoked the permit under Section 12(b)(8) which provided, "the Town Manager shall revoke any license where any of the following occur:…(8) A licensee, operator or employer has knowingly allowed any live performance or conduct featuring any specified sexual activities to occur on the licensed premises;…"  Sexual activities are defined as sexual physical contact between employees and patrons of sexually oriented businesses and specifically include "lap dancing" or manual or oral touching or fondling of specified anatomical areas, whether clothed or unclothed."  They also include simulated or actual (11) showing of human genitalia in a state of sexual stimulation or arousal, (2) acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sadomasochistic abuse, fellatio or cunnilingus, (3) fondling or erotic touching of another person's genitals, pubic region, buttocks or female breasts, (4) lap dancing, or (5) excretory functions as part of or in connection with any such activities." **Exhibits B, C and V**.

10. In accordance with §12 of the ordinance, Ms. Therrien wrote Centerfolds on July 15, 2002, advising it that the Town would be revoking its license.  **Exhibit C**; **Exhibit F**, Letter to Mr. Mario M. Pirozzoli, Jr./ Centerfolds from Ms. Therrien dated July 15, 2002.  See also **Exhibit V.**

11. Ms. Therrien also advised Centerfolds of its right to appeal her revocation. **Exhibits F and V**.

12. The ordinance concerning sexually oriented businesses allows an aggrieved party to request a public hearing where it can present evidence and have a right to cross-examine all Town officials and witnesses.  **Exhibit B**.

13. Centerfolds appealed the Town Manager's decision and a public hearing was held on August 27, 2002.  **Exhibit G**, Written Application of Appeal.

14. At the hearing, Centerfolds, in essence, conceded that physical contact and "lap dancing" was occurring on the premises and instead attacked the Town's proof that a manager or supervisor at Centerfolds had knowledge of the violations which were occurring on Centerfolds' premises. **Exhibits C** and **H,** Centerfolds' Closing Argument and Memorandum of Law.

15. At the hearing, plaintiff was represented by counsel and was given an opportunity to present evidence and cross-examine witnesses, and submitted written comments. **Exhibits C** and **H.**

16. The motion put to the Town Council was to sustain the revocation by Town Manager Therrien, and the vote was 4 in favor and 4 opposed. **Exhibit I**, Transcript of Revocation Hearing dated September 10, 2002.

17. Defendants Aresimowicz, Cimadon, Ward and Ragazzi voted to

sustain the license revocation. The other four members voted to overrule Ms. Therrien's revocation. **Exhibit I**.

18. The Town Attorney interpreted this as a vote not to sustain the Town Manager's revocation and the revocation was rescinded. **Exhibit J**, Letter to Ms. Therrien from Attorney E. Timothy Sullivan, Jr. dated September 13, 2002; **Exhibit K**, Letter to Mario M. Pirozzoli, Jr./ Centerfolds from Ms. Therrien dated September 18, 2002. See also **Exhibit V.**

19. During the pendency of the appeal, the Town Manager's revocation of Centerfolds' license was stayed. **Exhibit B**.

20. Centerfolds did not close its business even for one day as a result of the Town Manager's actions. **Exhibit B.**

21. On the day of the vote, some of the members of the Council met prior to the meeting to discuss the announcement that there would be a vacancy in the Deputy Mayor's position, and the Mayor wanted to name the successor. **Exhibit L**, Deposition Transcript of Defendant Ida Ragazzi.

22. The Council members did not discuss the issue of Centerfolds license or how they intended to vote on the issue before them. **Exhibits L** and **M,** Deposition Transcript of Defendant Joseph Aresimowicz; **Exhibit N**, Affidavit of Ida Ragazzi; **Exhibit O**, Affidavit of Joseph Aresimowicz; **Exhibit P**, Affidavit of Linda Cimadon; **Exhibit Q**, Affidavit of Joanne Ward.

**History of Enactment of Berlin's Sexually Oriented Business Ordinance**

23. On October 19, 1999, the Town Council passed a moratorium on all new sexually oriented businesses so that the ordinance committee could research and draft an ordinance for this type of business. **Exhibit R**, Minutes of Special Town Council Meeting, October 19, 1999.

24. The moratorium was extended an additional 3 months while the work on the ordinance was completed. **Exhibit S**, Minutes of Town Council Meeting, March 21, 2000.

25. A public hearing was held on the ordinance on June 13, 2000 and the Town Council passed the ordinance on June 20, 2000. **Exhibit T**, Minutes of Town Council Meeting, June 20, 2000.

26. The ordinance committee prepared a "Sexually Oriented Business Summary" accompanying the proposed ordinance. **Exhibit U,** Sexually Oriented Business Summary.

27. This Summary cites to the experiences of other municipalities in dealing with the negative secondary effects of such businesses if permitted without regulation. "Such negative secondary effects include, but are not limited to, an increase in high-risk sexual activity and prostitution, resulting in higher risk of public exposure to communicable diseases and AIDS, property devaluement, increased criminal activity, and a decline of retail trade." The Summary also states, "The Town of Berlin, like other municipalities, is susceptible to the proven secondary effects of SOBs. Of particular concern to Berlin is the existence of the

6

Berlin Turnpike, a major commercial thoroughfare that bisects the Town. The Berlin Turnpike has been a magnet for SOBs and, with its increased development, will continue to attract these types of businesses. Other areas of Berlin have been and will continue to be targets of SOBs. **Exhibit U.**

28. Of particular concern and one of the motivating factors of the Council and ordinance committee was the fact that Hartford had problems with the adverse secondary effects of SOBs such as crime and prostitution. **Exhibits L, M, N, O, P** and **Q.**

29. The intent of the Berlin Town Council in enacting the sexually oriented business ordinance was to combat the adverse secondary effects of this type of business. **Exhibits B, N, O, P, Q** and **U.**

```
                                    DEFENDANTS,
                                    TOWN OF BERLIN, BONNIE L.
                                    THERRIEN, IDA RAGAZZI, JOANNE
                                    WARD, JOSEPH ARESIMOWICZ
                                    AND LINDA CIMADON


                                    By_____
                                      Thomas R. Gerarde
                                      ct05640
                                      tgerarde@hl-law.com
                                      Melinda A. Powell
                                      ct17049
                                      mpowell@hl-law.com
                                      Howd & Ludorf
                                      65 Wethersfield Avenue
                                      Hartford, CT  06114
                                      (860) 249-1361
                                      (860) 522-9549 fax
```

## **CERTIFICATION**

       This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 23rd day February, 2004.

Norman A. Pattis, Esquire  
51 Elm Street, Suite 409  
New Haven, CT  06510

                                                                                                                         _____  
                                                                                                    Thomas R. Gerarde