# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CENTERFOLDS, INC. and** | : | |
| **MARIO PIROZZOLI, JR.,** | | |
| **Plaintiffs** | : | |
| | | |
| **VS.** | : | **CIVIL NO. 3:CV02006 (WWE)** |
| | | |
| **TOWN OF BERLIN,** | : | |
| **BONNIE L. THERRIEN,** | | |
| **IDA RAGAZZI,** | : | |
| **JOANNE G. WARD,** | | |
| **JOSEPH ARESIMOWICZ, and** | : | |
| **LINDA CIMADON,** | | **APRIL 29, 2004** |
| **Defendants** | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.    **BACKGROUND AND FACTS**

This case, brought by Complaint dated November 12, 2003, is the result of the Town of Berlin's reaction to a newspaper article rather than its own personal knowledge. The Town of Berlin did no independent research on the alleged charges against Centerfold's Inc. and Mario Pirozzoli, Jr.. They relied solely on the reports of others. Based solely on the newspaper article and hearsay reports, the Town of Berlin and its agents decided to revoke the license and intentionally violate the First Amendment right of the plaintiffs. **Exhibit 1**.

## II.    LAW AND ARGUMENT

### A.    Summary Judgment Standard

_____"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue of material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard." DHR Construction Co., Inc. v. Thomas J. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980).

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes

v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's

favor may be drawn, the moving party simply cannot obtain a summary judgment."
Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988),
and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983)
(internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that
a reasonable jury could return a verdict for the non moving party.'  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, '[i]f, as to the issue on which
summary judgment is sought, there is any evidence in the record from which a
reasonable inference could be drawn in favor of the opposing party, summary
judgment is improper.'"  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d
1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d
Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or
state of mind are at issue, summary judgment should be used sparingly."  Ruscoe
v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn.
2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd
Cir. 1988).  "[S]ummary judgment...is particularly inappropriate where the inferences
which the parties seek to have drawn deal with questions of motive, intent, and
subjective feelings and reactions."  Suarez v. Dickmont Plastics Corp., 229 Conn.
99, 111, 639 A.2d 507 (1994).  "A question of intent raises an issue of material fact,

which cannot be decided on a motion for summary judgment." <u>Picataggio v. Romeo</u>, 36 Conn. App. 791, 794, 654 A.2d 382 (1995).

**B.    <u>Plaintiff's Due Process Claim is One That is Capable of Repetition Yet Evading Review</u>**

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>City of Erie, et al v. Pap's</u>, 529 U.S. 277, 287 (2000).

The plaintiffs' claim of a due process violation is not rendered moot since this claim is capable of repetition yet evading review and they maintain a legally cognizable interest in remaining in their business.   A suit remains justiciable "...where the following two circumstances were simultaneously present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 481 (1990).  In <u>City of Erie v. Pap's</u>, the Court concluded that the challenge to the city of Erie's regulation banning total nudity in public was not rendered moot by Pap's going out of business.  The Court found that the city had an ongoing injury and that the availability of relief was sufficient to prevent the case from being moot.  <u>City of Erie v. Pap's</u>, 529 U.S. 277, 288 (2000).  Even if the defendants voluntarily stopped their actions to this challenged practice, the case

would not be moot.  The Court, in <u>Friends of the Earth Inc. v. Laidlaw Environment</u>, 528 U.S. 167 (2000), stated "...the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur....The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." <u>Friends of the Earth, Inc. v. Laidlaw Environmental</u>, 528 U.S. 167, 189 (2000).

The defendants claim that since the plaintiffs' license was not revoked, whether or not the defendants were acting under the color of law to deprive them of a right under the Constitution, there is no deprivation to be remedied by this action.  Pursuant to the Town of Berlin's *An Ordinance Concerning Sexually Oriented Businesses*, a license may be not be renewed if the town manager determines that there are "...two or more material violations of the Ordinance to which licensee has received written notice..." §11(a)(1) of **Exhibit 2**.  The Town Manager is responsible for investigating, granting, denying, renewing, suspending and revoking all sexually explicit business applications and license applications. §10(a) of **Exhibit 2**.  Nowhere in the statute  is "material violation" defined, yet a licensee can find himself without a renewal of his license.  The licensee can appeal this decision, which may take up to twenty (20) days to be heard by the Town

Council, but if his previous license expires prior to his renewal being granted during a public hearing in front of the Town Council, the licensee is unable to operate his business.  A similar situation occurs with a suspension of a license. §12(a) of the ordinance allows the Town Manager of Berlin the discretion to suspend a license up to 30 days *if there is a material violation*.  The ordinance states that no business may operate while under suspension, but the licensee may appeal.  A literal reading of the text would allow the Town of Berlin to suspend a license for thirty (30) days and hold a hearing within twenty (20) days of receiving notice of a licensee's intent to appeal.  The Town of Berlin could effectively close a sexually explicit business without ever hearing an appeal. §12(b)(4) of the ordinance also allows the Town of Berlin to revoke a license based on two (2) material violations of the ordinance within one year.  Again, there is no definition of "material violation".  It is reasonable to expect that the Town of Berlin will continue the challenged practice based on their evident devotion to crafting this ordinance and that the plaintiffs will undeniably remain a target.  It is reasonable to expect that the Town of Berlin will successfully drive the plaintiffs out of business before the plaintiffs have an opportunity to exercise their due process rights.

**C.     Plaintiff's First Amendment Challenge**

"If there is a bedrock principle underlying the First Amendment, it is that

government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." <u>Texas v. Johnson</u>, 491 U.S. 397, 414 (1989). "Although debates about the morality or social acceptability of nude dancing and other 'adult' entertainment will likely continue for many years to come, as a matter of constitutional law the matter largely has been put to rest. The United States Supreme Court has established that such activity, provided that it is not obscene, constitutes expressive conduct that is entitled to protection under the First Amendment. The expressive conduct is an erotic one which, by its nature, may be troubling to a segment of the populace. No matter how tasteless such performances may appear to many, until the United States Supreme Court changes its view, such dancing is entitled to protection under the First Amendment. If the principles set forth in the First Amendment are to survive, then it is precisely those ideas and beliefs which claim the fewest adherents, and which large segments of society find most offensive, that are in the greatest need of the bulwark of the First Amendment. Although the dance may be tasteless and indecent to many, like other 'unpopular' speech (whether written, spoken or performed) it is entitled to its place, albeit a modest one, in the marketplace of ideas. The Court's task is not to determine the morality, tastefulness or artistic merits of the conduct at issue." <u>Barrell of Dolls Saloon v. City of Rochester</u>, 190 F. Supp. 2d. 472, 477 (2001) (W.D.N.Y.).

### 1. Standing

Article III, section 2 of the United States Constitution confines federal court jurisdiction to 'cases' and 'controversies'.  To assert its Article III standing, a plaintiff must demonstrate (1) that is has suffered an injury-in-fact, meaning any injury that is concrete and particularized; (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.   Granite St. Outdoor Ad. V. City of Clearwater,  __F.3d __  (11th Cir. 2003)(Docket No. 02-14434) November 28, 2003).

Defendants claim that plaintiffs lack standing to bring a facial challenge to the sections of the regulations as several were never applied to them.  The Court, in Barrel of Dolls Saloon, held that the plaintiffs [owner seeking a license] had the requisite standing "...to assert First Amendment claims with respect to the enforcement of the Ordinance's restrictions on activities inside sexually oriented businesses." Barrel of Dolls Saloon at 481. In addition, the Court determined that the licensing statute allowed  unbridled discretion in a government official to permit or deny expressive activity thus, relying on  City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 755-756 (1988), a licensing scheme can be facially challenged without necessarily applying for a license and then being denied.  "At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a

government official or agency constitutes a prior restraint and may result in censorship....And these evils engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge.  First, the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused....Second, the absence of express standards makes it difficult to distinguish, 'as applied', between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power.  Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech.  Without these guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression."  City of Lakewood at 757-758.

The licensing structure of the Town of Berlin's gives the Town Manager the responsibility "for investigating, granting, denying, renewing, suspending and revoking all sexually oriented business applications and licenses pursuant to this Ordinance." §10(a) of **Exhibit 2.**  Though the Town Manager must renew a prior license if the application and renewal fee are paid, the Town Manager shall not reissue a license to a licensee who has received more than two (2) material

violations in the year preceding to renewal. §11(c) of **Exhibit 2**. The ordinance contains no definition of "material violation" thus allowing the discretion of the Town Manager to make this determination. A similar situation occurs with the suspension and revocation of a license. §12 of **Exhibit 2**.

Also at issue in this case is the challenge to various sections of the ordinance which regulate protected speech based on its content. The Court, in Diamonds and Lace Showbar v. City of Chattanooga, 107 F.3d 403, 414 (1997) (6th Cir.), ruled that present license holders have standing to challenge the substantive criteria for licenses and permits. The Court determined that since a license holder must apply annually for renewal and is subject to possible revocation proceedings, the license holder has standing to challenge the activities proscribed by the ordinance since the license holder who wishes to engage in these proscribed activities would be in violation of the ordinance and thus disqualify the license holder from obtaining a permit. "Furthermore, the fact that no revocation proceedings are currently pending is immaterial; just as a plaintiff need not go through the formality of submitting an application in a facially unconstitutional licensing scheme, *see* Freedman v. Maryland, 380 U.S, 51, 56 (1965), so too a current license-holder "does not have to wait until his license is revoked to have standing to challenge the allegedly overbroad licensing scheme that would allow its revocation." G.& V. Lounge [v. Michigan Liquor Control Comm'n, 23 f.3d 1071] at 1075 [6th Cir. 1994]." Diamonds

and Lace at 414.     Thus, the plaintiffs have standing to challenge not only those sections of the Town of Berlin's ordinance that violate the First Amendment, but also those sections regulating the operating requirements for sexually explicit businesses, such as booths, cubicles, rooms or stalls.   Though the plaintiffs presently have no booths, cubicles, rooms or stalls at the present time, they may decide in the future to include these in their operations and  thus have standing for their present constitutional challenge to the ordinance's operating requirements.

## 2.    Secondary Effects

The United States Supreme Court "...has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment."   City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986).  "On the other hand, so-called "content-neutral" time, place and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonable limit alternatives." Renton at 47.  In Renton, the Court upheld *zoning regulations* which prohibited the location of adult movie theaters.  Relying on the 'secondary effects' of sexually explicit materials, the Court determined that the city of Renton could zone adult movie theaters since the city was not attempting to restrict their message but rather circumscribe their choices as to location and the city had an interest in planning and regulating use of property for commercial property.  Renton at 48.  This Court also

determined that the city of Renton "...was entitled to rely on the experiences of Seattle and other cities, in particular on the 'detailed findings' summarized in the Washington Supreme Court's *Northend Cinema* opinion....so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem the city addresses." Renton at 51-52.

The United States Supreme Court further expanded the content neutral application of 'secondary effects' to a ban on *all public nudity*.  see City of Erie v. Pap's, 592 U.S. 277 (2000).  The Court discussed the level of scrutiny that must be applied in determining whether a regulation violates the First Amendment.  "To determine what level of scrutiny applies to the ordinance at issue here, we must decide whether the state's regulation is related to the suppression of expression.... If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from O'Brien for evaluating restrictions on symbolic speech....If the government *interest* [emphasis added] is related to the content of the expression, however, then the regulation falls outside of the O'Brien test and must be justified under a more demanding standard." Pap's at 289.  The Court in Pap's determined that since it banned *all public nudity*, not just nude dancing, the ordinance was reviewable under the O'Brien standard.  The Court found the ordinance content neutral on its face.

The United States Supreme Court has limited the application of 'secondary effects' to land use and zoning regulations and total bans on public nudity [*see* Barnes v. Glen Theatre, 501 U.S. 560 (1991); City of Renton v. Playtime Theatres, 475 U.S. 41 (1986); Young v. American Mini Theatres, 427 U.S. 50 (1976); City of Erie v. Pap's, 529 U.S. 277 (2000). The Court should be guided by these decisions and the First Amendment jurisprudence "...that has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986). The defendants' claims that 'secondary effects' can be applied to activities which contain expression and require only the scrutiny of the O'Brien four-part test to be found constitutional is without basis and contrary to what the United States Supreme Court has stated: "If the government interest is related to the content of the expression, however, then the regulation falls outside of the O'Brien test and must be justified under a more demanding standard." Paps at 289. The defendants' *Ordinance Concerning Sexually Oriented Businesses* is a restraint on speech masquerading as a zoning regulation in order that the court will be lulled into a sense that it fits within the parameters of the cases cited herein. **Exhibit 2.**

This Court may decide to follow the opinion of the United States District Court, Western District, in Barrell of Dolls, **Exhibit 3**, in which the Court analyzed

the provisions of the City of Rochester's Ordinance concerning the undesirable secondary effects associated with sexually explicit businesses.  The Court did not apply the "content neutral time, place and manner test as defined in <u>Renton</u>[1] but instead applied the more rigorous O'Brien test:  "...a government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."   <u>United States v. O'Brien</u>, 391 U.S. 367, 377 (1968).  The court determined this test was the appropriate test since the ordinance, exactly like the Town of Berlin's ordinance, prohibited 'erotic' touching and the ordinance was a direct regulation of expressive conduct.  "The implication of this language seems to be that touching certain parts of the human body is permitted, but only if the touching is not "erotic".  Plainly then, it is not merely the act of touching that is prohibited, but touching in a way that conveys a message of eroticism."  <u>Barrell of Dolls Saloon</u> at 486.

In its analysis, the court in <u>Barrell of Dolls Saloon</u>, determined that the since

---

[1]     The <u>Renton</u> test states that 'content neutral' time, place and manner regulations are permissable so long as they (1) are designed to serve a substantial government interest; and (2) do not unreasonably limit alternative avenues of communication.  <u>Renton</u> at 47.

the ordinance expressly restricted expressive conduct, under the O'Brien test, the ordinance must further an important or substantial government interest *and* not impose a greater burden on First Amendment freedoms than necessary.  The court concluded that even though the ordinance contained a number of findings regarding the secondary effects of  sexually explicit businesses, there was no nexus between these secondary effects and the "evils sought to be addressed." <u>Barrell of Dolls Saloon</u> at 489.  "When a  municipality seeks to regulate protected activity in order to  further  some  legitimate  governmental  interest,  then,  "the  First  Amendment requires,  not  that  the  restriction  be  merely  *related*  to  the  government  interest asserted,  but  rather  that  each  restriction  imposed  *furthers*  an  important   or substantial  government  interest.    <u>Nakatomi  Investments,  Inc.  V.  City  of Schenectady</u>, 949 F.Supp. 988 (N.D.N.Y. 1997) citing <u>O'Brien</u> at 376-77." <u>Barrell of Dolls Saloon</u> at 489.  The court found no nexus between the suggestion that sexually  explicit  businesses  encourage  sexual  activity,  crime  and  unhealthy conditions, and the First Amendment restrictions.  The court enjoined the city of Rochester from enforcing the provision of the regulation which prohibited 'specified sexual activities' in or on the premises of sexually explicit businesses.[2]

---

[2]      "Specified sexual activities, as defined in the city of Rochester's ordinance: as actual or simlated acts of masturbation, sexual intercourse, oral or anal copulation or sadomasochism; fondling or other erotic touching of or physical contact with one's own or another's genitals, pubic area, buttocks or female breasts, whether clothed or

The court in <u>Barrell of Dolls Saloon</u> went further and determined that the ban on totally nudity at a sexually explicit business directly targeted expression, not just conduct.  The court distinguished <u>Erie</u> ( which allowed total ban on public nudity) from the case at hand since <u>Erie</u> banished all public nudity, not just nude public dancing.  The court found that the ordinance "does not simply require some minimal amount of clothing...but directly restricts and regulates the manner in which the dancers perform."  <u>Barrell of Dolls Saloons</u> at 491.  "Because there is no indication that the restrictions imposed by the Ordinance will tend to produce more than a *de minimis* reduction of the negative secondary effects associated with sexually oriented businesses...I find it unconstitutional."[3]   "...it is well established "[n]udity alone does not place otherwise protected material outside the mantle of the first

---

unclothed; human male or female genitals in a state of sexual stimulation or arousal; or excretory functions or acts with animals as part of or in conjunction with any of the activities set forth herein. Activities which are commonly referred to by the slang terms "lap dance," "straddle dance," "face dance," or "table dance," shall be included in this definition.  For purposes of this definition, "sadomasochism" means infliction of pain, flagellation or torture, or the condition of being bound, fettered or otherwise physically restrained.

[3]     The city of Rochester's ordinance prohibited exposure of "specified anatomical areas as defined as: any showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a full opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

amendment."  <u>Schad, 452 U.S. at 66</u>.  Nor does the fact that the dance is sexual remove the Constitution's protection: "Sexual expression which is indecent but not obscene is protected by the First Amendment." <u>Sable Communications v. FCC, 492 U.S. 115, 126 (1989)</u>.  And, it is immaterial for constitutional purposes that nude dancing may be performed for profit.  *See* <u>Joseph Burstyn, Inc. V. Wilson, 343 U.S. 495 (1952)</u>."  <u>Nakatomi Investments v. City of Schenectady</u>, 949 F.Supp. 988, 999 (1997).  Determining whether nude dancing is obscene is a question of fact and inappropriate for summary judgment.

### 3.    Vagueness

A law is vague if persons of "common intelligence must necessarily guess at its meaning and differ as to its application."  <u>Connally v. General Construction Co.</u>, 269 U.S. 385 (1926).  An unclear law that affects First Amendment rights may appear to chill persons from engaging in protected speech, allow enforcement to be arbitrary, discretionary and unbridled, and leave an individual without clear guidance as to the what speech will be punished.

The ordinance is vague in that is prohibits innocent contact between performers and patrons and potentially can cause a revocation or nonrenewal of the plaintiffs' license.  §5(d) states that "No entertainer, either before, during or after a performance, shall have physical contact with any patron of a sexually oriented business while on the licensed premises."   A hug between friends is clearly

expressive contact, whether or not one of the participants is a performer at a sexually explicit business.  The secondary effects that the defendants rely on to promote this ordinance will not be furthered by regulating this expressive conduct. *Intentionally* regulating expressive contact only at a sexually explicit business is clearly content-based regulation and thus subject to strict scrutiny, not merely the O'Brien test.  "If the government interest is related to the content of the expression, however, then the regulation falls outside of the O'Brien test and must be justified under a more demanding standard."  Paps at 289.  The vagueness of the statute has potentially obvious chilling effects on free speech, and a violation by the plaintiffs may be a basis for revoking or suspending their license.

The ordinance is also vague in that it does not clearly state if nude dancing is permitted during the performance of an entertainer. §5(b) prohibits a performer from exposing any specified anatomical areas[4] either before or after a performance. The defendants, however, claim that any exposure during a performance violates the ordinance and specifically mention this violation in their brief in support of their motion for summary judgment and during the public hearing held on August 27,

---

[4]    Specified Anatomical Areas means: (1) less than completely and opaquely covered human genitals, pubic region, buttocks, anus or female breasts below a point immediately above the top of the areola, or (2) human male genitals in a discernibly turgid state, even if completely opaquely covered.

2002.  **Exhibit 1**.  §14(a) of the Town of Berlin's ordinance states that fines and criminal charges may be levied on a violator of the ordinance.  **Exhibit 2**.  "A statute is void for vagueness if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement".  Kolender v. Lawson, 461 U.S. 352,357 (1983)."  The Free Speech Coalition v. Janet Reno, 198 F.3d. 1083, 1095 (1999).

### C.   Immunity for the Defendants Therrien and Town Council Members

_____"Courts have recognized two forms of immunity: absolute and qualified....The presumption is that the qualified rather than the absolute immunity is sufficient to protect government officials in the exercise of their duties," and hence courts are generally "quite sparing" in their recognition of absolute immunity.  Burns v. Reed, 500 U.S. 478, 486-87 (1991)."  DiBlasio v. Novello, 344 F.3d 292, 296 (2003).

_____The 2nd Circuit, reiterating a line of United States Supreme Court cases, stated that absolute immunity is accorded to judges and "prosecutors functioning in their official capacities and, under certain circumstances, is also extended to officials of government agencies "performing certain functions analogous to those of a prosecutor" or judge."  DeBlasio at 297.  Defendants, Town Council Members

Ragazzi, Aresimowicz, Ward, and Cimadon, are not officials to a government agency and thus are not entitled to absolute immunity for their actions.

In deciding if defendant, Town Manager Therrien, is entitled to absolute immunity for her actions, the 2nd Circuit, relying on Butz v. Economou, 438 U.S. 478 (1978) and Cleavinger v. Saxner, 474 U.S. 193 (1985)applied a functional approach.  "In considering whether the procedures used by the agency are sufficiently similar to judicial process to warrant a grant of absolute immunity, we employ a "functional approach"...and look to whether the actions taken by the official are "functionally comparable" to that of a judge or prosecutor....Government actors who seek absolute immunity "bear the burden of showing that public policy requires an exemption of that scope." DiBlasio at 297.  If the burden is met, absolute immunity applies to all actions by the official in their official capacity. DiBlasio at 297.

In evaluating the "functional approach" analysis in determining the similarity between judges and officials in government agencies, the court, in DiBlasio, assessed the six factors outlined in Butz that are characteristic of the judicial process: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary

nature of the process; and (f) the correctibility of error on appeal." Diblasio at 298.

_____The court, in Butz, extended absolute immunity to Administrative Law Judges or a modern federal hearing examiner since "[T]here can be little doubt that the role of the modern federal hearing examiner or administrative law judge...is 'functionally comparable' to that of a judge." Butz at 513. In DiBlasio, the 2nd Circuit did not extend absolute immunity to the New York State Department of Health when suspending the professional licenses of doctors. Though the court determined that the board members were insulated from political influence [the court assumed they were not removable at will] and they were most likely not influenced in their decision by threats of lawsuits, the remaining Butz factors lacked "...sufficient similarity to the judicial process _to warrant absolute immunity from suit for involved officials." DiBlasio at 298. The court determined that the statute did not adequately protect from wrongful deprivation even though a pre-hearing suspension interview in which the doctor could be represented by counsel and submit written comments or expert opinions since final authority to suspend a license was the commissioner's, who wielded appointment and removal power. The court also determined that review of suspensions had no precedent value, nor were the procedures adversarial in nature [they did not have a neutral decision maker and evidentiary rules]. The court asked the question "[D]oes the official have authority to issue subpoenas, make evidentiary rulings, regulate the course of the hearing, and make or recommend

decisions?  More importantly, does she exercise judgment "free from pressures by the parties or other officials within the scope of the agency"? <u>Butz</u> at 513-514." <u>DiBlasio</u> at 299.

_____Town Manager Therrien's position requires her wearing many hats.  She is the investigator, grantor, denier, renewer, suspender and revoker of licenses as well as the enforcer of the ordinance.  Her official capacity, when applying the <u>Butz</u> factors, is not comparable to the function of a judge.  She is hired, by contract, by the Town Council and is thus influenced politically.  Her very livelihood depends on Town Council.  The hearing provided to the plaintiffs on August 27, 2002, was not adversarial in that it had no neutral  decision maker and evidentiary rules.  **Exhibit 1**.  The statute also does not contain the necessary procedural safeguards for the suspension and denial of renewal of a license.  Town Manager Therrien is not entitled to absolute immunity for her actions. **Exhibit 2**.

The defendants argue that if absolute immunity is not granted to them, they should be entitled to qualified immunity.

"The resolution of immunity questions inherently requires a balance of the evils inevitable in any available alternate....there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (2001).  "Qualified immunity is "an entitlement not to stand trial or face

the other burdens of litigation....The privilege is "an immunity from suit rather than a mere defense to liability...". <u>Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)</u>". <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). This doctrine "strikes a balance between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner, and, on the other hand, to shield officials responsibly from attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury. <u>Locurto v. Safir, 263 F. 3d 154, 162-63 (2nd Cir. 2001)</u>." <u>Poe v. Leonard</u>, 28s F. 3d 123 (2nd Cir. 2002). The court, in <u>Harlan</u>, held that "...government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

To determine if qualified immunity applies to a government official, the first inquiry is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [officers] conduct violated a constitutional right?". <u>Saucier</u> at 201. The second inquiry is "..whether the right was clearly established....is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u> at 201. The 2nd district has further refined this second inquiry and the party asserting the injury must also establish that the officials actions did not violate clearly established law or it was not unreasonable for the

official to believe he did not violate the constitutional right.

Defendants Ida Ragazzi and Linda Cimadon were members of the ordinance committee concerning sexually oriented businesses, were members of the Berlin Town Council that voted unanimously to pass the ordinance, and voted to revoke the license of Centerfold. **Exhibit 4,5, 6, 7.** Defendant Joseph Aresimowicz was a member of the Berlin Town Council that unanimously passed the ordinance concerning sexually oriented businesses and voted to revoke the license of Centerfold. **Exhibit 7, 8**. Defendant Joan Ward was a member of the Berlin Town Council and voted to revoke the license of Centerfold. **Exhibit 9.** Defendant "Town Manager" Bonnie Therrien was actively involved with the design and implementation of the ordinance. **Exhibit 4,7**.

All of the defendants were aware of the constitutional aspects of this ordinance. The *Sexually Oriented Business Summary* clearly states that sexually explicit material is protected under the First Amendment and may not be suppressed on the basis of its content. **Exhibit 4**. The summary also states that "...no Court having judicial authority in Connecticut has heard the issue of whether licensing provisions for SOBs [sexually oriented businesses] are content-neutral time, place and manner restrictions. Therefore, those Connecticut municipalities that wish to provide licensing requirements in order to control the harmful secondary effects of SOBs must do so without knowing that such regulations will be upheld

under a constitutional challenge." **Exhibit 4, p.5.**

The defendants were also aware that their support of this ordinance was a direct violation of the plaintiffs First Amendment freedoms. The *Ordinance Concerning Sexually Oriented Businesses* specifically states that the purpose of the Town Council is to "protect...morality". **Exhibit 2, p1.** The court, in <u>Barrell of Dolls Saloon</u>, commented on the city of Rochester's inclusion of this very same purpose. In Footnote 6 of the opinion, the court stated that regulations directed at the morality of sexually explicit businesses, rather than at the theatre or opera, "...is precisely the kind of censorship...against which the First Amendment aims to guard. <u>Nakatomi at 99-100</u>." <u>Barrell of Dolls Saloon</u> at 490.

None of the defendants are entitled to the "shield" of qualified immunity. Their claims of being unbiased in their goal to eradicate long standing businesses is insulting to the plaintiffs. Their affidavits are meaningless until they are cross-examined and subject to the rules of evidence. Their depositions are meaningless until their testimony is subject to the rules of evidence and impeachment of their statements.

## III.   CONCLUSION:

The plaintiffs' due process claim is not moot since this claim is capable of repetition yet evading review and they maintain a legally cognizable interest in

remaining in business.  The plaintiffs' have standing to facially challenge the

ordinance in its entirety since the ordinance regulates speech and is vague.  The

ordinance itself is vague and violates the First Amendment freedoms of the

plaintiffs.  None of the defendants are entitled to the shield of qualified immunity

as the knowlingly and unreasonably violated the constitutional rights of the

plaintiffs.


THE PLAINTIFFS


BY_____

NORMAN A. PATTIS
Federal Bar No. ct13120
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Telephone (203) 562-9931
Their Attorney

<u>CERTIFICATION</u>

_____
    This is to certify that a copy of the foregoing was mailed, first class mail,

postage prepaid, on April 29, 2004, to the following counsel of record:

Thomas R. Gerard, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114


                                    _____
                                    Norman A. Pattis