EXHIBIT 1

## REVOCATION HEARING FOR CENTERFOLDS INC.
## TOWN OF BERLIN
### Tuesday, August 27, 2002 @ 6:30 p.m.
### Town Council Chambers – Berlin Town Hall

### Transcript

MAYOR ARGAZZI:                I would like to call to order the hearing requested by
Centerfolds Inc. d/b/a Centerfolds.  The purpose of this
hearing is to hear testimony and additional evidence that
is presented regarding the revocation of a Sexually Oriented
Business license for Centerfolds, which operates at
1861 Berlin Turnpike, Berlin, CT.  We are operating under
Ordinance No. 5-00 which is entitled "An Ordinance
Concerning Sexually Oriented Businesses".  The respondent
excuse me, my letter dated July 15, 2002 the Manager
revoked the license of the respondent Centerfolds Inc.
d/b/a Centerfolds.  The respondent has filed an appeal.
According to Section 13(c) of the Ordinance upon an
appeal being filed "The Town Council shall conduct the
hearing in the order and form and with such methods
of proof as it deems fair and appropriate. The rules
regarding the admissibility of evidence shall not be
strictly applied, but all testimony shall be given under
oath or affirmation.  (d) Immediately following such
hearing, the Town Council shall enter its vote to either
sustain or overrule the revocation.  Within five (5) days
after such hearing, the Town Council shall issue written
notice of its final decision, stating the reasons therefor,
and shall forward such decision to the licensee by certified
mail, return receipt requested.  If the revocation is overruled,
the Town Manager shall immediately revoke the revocation
as the case may be.  Procedurally this hearing is going to
proceed as follows: To begin with, the witnesses, if there are
any, will be sworn in, then the Manager will present her
evidence upon which she relied in revoking the license.
Any witnesses shall then be subject to cross-examination
by the respondent.  The Council may ask questions of the
witnesses.  Upon conclusion of the Manager's case the
respondent shall be permitted rebuttal evidence and any
witnesses presented during rebuttal shall also be subject
to cross-examination.  I will allow closing arguments at the
conclusion of all evidence, at which point the hearing is
concluded we will follow the directives of the Ordinance
and issue a decision.  Madame Clerk I will ask you to swear

in any witnesses at this time.  Anybody who is planning
on testifying kindly stand up so you can be sworn in.
(any potential witnesses).

TOWN CLERK:    Will you raise your right hand.  Do you solemnly swear
(or affirm, as the case may be) that the evidence you shall
give concerning the case now in question,  shall be the whole
truth and nothing but the truth; so help you God.

WITNESSES:    I do.

CORPORATION COUNSEL:  Let the record reflect who was sworn in.

MAYOR ARGAZZI:    If the three people who were sworn in give their names.

MANAGER THERRIEN:    Bonnie L. Therrien, Town Manager.

ROBERT BAILEY:    Robert J. Bailey, Liquor Control.

MARIO PIROZZOLI:    Mario M. Pirozzolli, Jr.

MAYOR ARGAZZI:    Also for the record, Counsel if you would identify yourself
please.

ATTORNEY SILVER:    Yes, Daniel A. Silver of One Liberty Square, New Britain,
CT representing the respondent.

MAYOR ARGAZZI:    Thank you.  Madame Manager are you ready to proceed?

MANAGER THERRIEN:    Mr. Mayor and members of the Council, I had read in the
newspaper about the suspension of the liquor license for
Centerfolds due to some actions that occurred.

MAYOR ARGAZZI:    For the record, all nine members of the Council are present.
Ms. Therrien would you please start over.

MANAGER THERRIEN:    Yes, I would be glad to. When I read the Hartford Courant
and the New Britain Herald about the suspension of the
liquor license for Centerfolds based on some possible
sexual activity.  I then did a freedom of information request
to the State Liquor Control Commission for detailed reports
on what occurred that led up to those suspensions and I did
receive those reports concerning events that happened on
August 19, 2001.  After reading through those reports,
carefully, and going over to our Sexually Oriented Business

Ordinance, I looked and saw under Section 12, and on the Ordinance this would be page 20, (8) A licensee, operator or employee has knowingly allowed any live performance or conduct featuring any specified sexual activities to occur on the licensed premises; then I must revoke the license. I then went over on page 2 of the Ordinance to the definition of specified sexual activities which include sexual physical contact between employees and patrons of sexually oriented businesses and specifically include "lap dancing" or manual or oral touching or fondling of specified anatomical areas, whether clothed or unclothed. Such casual sexual physical contact between strangers may result in the transmission of communicable diseases, which would be detrimental to the health of the patrons and employees of such sexually oriented businesses;. I then went back to reports from that date and found that there were a number of items that were seen by the State Liquor Control Agents that would fit into that category. Let me just get my list here. Such items were exposing of breasts, pubic hair, genitals, display of breasts, pubic hair, genitals, touching, caressing, fondling, mingling, contact with the patrons, and there was a number of those violations that occurred on that date. So after reading and going through that and looking at our Ordinance, I did send a letter to the owner of Centerfolds, who holds our license, on July 15, 2002 which revoked the license and then that was appealed by Centerfolds. Agent Bailey is with us tonight if Council wishes to talk to with him as he was one of the investigators that was on the scene during that date.

MAYOR ARGAZZI:    Okay, thank you. Mr. Silver do you care to cross-examine?

ATTORNEY SILVER:    I reserve cross-examination to see what evidence is going to be put in. There is nothing at this point to cross-examine, there are some opening statements.

MAYOR ARGAZZI:    She stated the evidence that she relied on in revoking the license and the procedure she went by in revoking the license. Do you have any questions for her at this time?

ATTORNEY SILVER:    I have no questions for at this time, I will have. I reserve the right to go forward with the hearing if in fact they can be supported.

MAYOR ARGAZZI:    I have some questions for her. Madame Manager, a copy of the initial license that was granted to Centerfolds Inc.,

3

|                          |                                                                                                                                                                                                                                                                                                                                            |
|--------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                          | are you submitting that as evidence?                                                                                                                                                                                                                                                                                                       |
| MANAGER THERRIEN:        | Yes.                                                                                                                                                                                                                                                                                                                                       |
| ATTORNEY SILVER:         | Can we mark these as exhibit numbers?                                                                                                                                                                                                                                                                                                      |
| MAYOR ARGAZZI:           | Yes you can.  You can give them to Kate.  Allow Council to see a copy of it.                                                                                                                                                                                                                                                               |
| ATTORNEY SILVER:         | I have no objections.                                                                                                                                                                                                                                                                                                                      |
| MAYOR ARGAZZI:           | This is a written application by Centerfolds, Inc. d/b/a Centerfolds, Mario M. Pirozzoli, Jr. 85 Rivergate Lane East Berlin, CT.  Is this the actual license, Madame Manager or this the revocation?                                                                                                                                        |
| ATTORNEY SILVER:         | Mr. Mayor, I want to object in as much as you, and this Council are sitting as adjudicators of this matter.  You are presenting evidence, I think the evidence should be submitted by the Town Manager. I think it is highly improper and prejudicial for this body to be presenting evidence.  This is an appeal to your body for evidence which may or may not come forth from the appropriate Town Clerk. |
| MAYOR ARGAZZI:           | Mr. Silver, to clarify, we are not presenting this document, I am reading this to clarify what it is, since we don't have copies for every Councilman.  I am trying to get an understanding from the Manager as to what this item is that she submitted. |
| ATTORNEY SILVER:         | I don't know what she has submitted, that is the point.  I would suggest just for proper form that whatever the Town Manager wants to submit she submit it and let us go forth. |
| MAYOR ARGAZZI:           | Madame Manager, what was the document that you just submitted and showed Council and handed to the Town Clerk? |
| MANAGER THERRIEN:        | A written application by the owner of the Centerfolds for an appeal of the revocation.  I apologize.  And then I also have all the reports of the August 19th event that came in through the State Liquor Control. |
| ATTORNEY SILVER:         | May I see copies of all that?                                                                                                                                                                                                                                                                                                              |

4

MAYOR ARGAZZI:          Yes.

ATTORNEY SILVER:        For the record I object to the submission of these documents
                        on the basis that it is pure hearsay.  Now there may be
                        further evidence which properly introduce those records
                        but on the basis of the introduction at this point if that is all
                        the evidence that the Town would have as existence for
                        documents for these proceedings on that grounds I would
                        object to the introduction of those evidence.

MAYOR ARGAZZI:          On what basis?

ATTORNEY SILVER:        It's hearsay evidence.  I understand that you do not have to,
                        you are not required to adhere to the standard rules of
                        evidence but those documents by themselves forming a basis
                        for revocation of the license, for first amendment based
                        activity which would potentially mean the closure of a
                        business.  Standing by themselves without further evidence
                        I say should be inadmissible.  I may not be admitted for
                        that purpose.  If we admitted them by another method
                        perhaps I wouldn't object.  On the basis of the way they
                        are being admitted to you now I would object.

MAYOR ARGAZZI:          Ms. Therrien, first of all can you identify the second exhibit?

MANAGER THERRIEN:       Yes.  Those are copies of all the reports I received
                        concerning the suspension of the license that occurred
                        on August 19, 2001, which I had asked from the State
                        under Freedom of Information to receive copies of all the
                        reports of the activity that took place on August 19, 2001.

MAYOR ARGAZZI:          Okay, and the purpose you are submitting these documents?

MANAGER THERRIEN:       That is what I had based the revocation on once I had read
                        those and talked with people then looked at the Ordinance.

MAYOR ARGAZZI:          Mr. Silver as you know we are not following the strict rules
                        of evidence.  I believe the Manager intends to call a witness
                        to additional clarify what was reported within those reports.
                        Therefor, I will allow the report to come in as evidence
                        that will be Town's "exhibit 2" 17 pages.

CORPORATION COUNSEL:    Mr. Mayor, if I could.  You can obviously provide copies
                        of all exhibits to Council or the respondent, while we are not
                        bound by the rules of evidence if Council further responded

if you would like an opportunity to keep the hearing opened
and be free to subpoena any of the authors of these
documents whereas you are aware as a administrative
proceedings are not bound by the rules of evidence but in all
fairness to the respondent if he desires he can subpoena
any one of these authors of the reports and cross-examine
them or examine them at a continued hearing.

MAYOR ARGAZZI:    Okay, the Council will offer that opportunity. Mr. Silver?

ATTORNEY SILVER:    I may very well take it but at this point I am going to
withhold decision to we see what happens. It is not my
case, this is the burden that is on the Town right now.

CORPORATION COUNSEL:  Let the record reflect that he has the opportunity to
continue this hearing to subpoena any witness that he
feels necessary to clarify any hearsay problems that he
perceives.

MAYOR ARGAZZI:    If there is no objection from the Council at the end of the
hearing we will consider that. Madame Manager do you
have further evidence you wish to introduce?

MANAGER THERRIEN:    I guess the only other item would be the actual Ordinance
because that is what was utilized for me in the revocation.

MAYOR ARGAZZI:    The Town's 'exhibit 3" will be the Ordinance No. 5-00
An Ordinance Concerning Sexually Oriented Business.
Is there any objection? Mr. Silver is there any objection
to the admission of that Ordinance?

ATTORNEY SILVER:    No.

MANAGER THERRIEN:    I sorry, there is one more item and it was sent certified to the
owners of Centerfolds saying that I am revoking and why
I am revoking, and that was dated July 15, 2002.

ATTORNEY SILVER:    I have no objections.

MAYOR ARGAZZI:    Okay, the Town's "exhibit 4" will be the revocation
letter from the Town Manager dated July 15, 2002.
Any further evidence?

MANAGER THERRIEN:    The only other item would be the letter that was sent to
the State under Freedom of Information requesting this
information, it is dated July 1, 2002.

MAYOR ARGAZZI:        Again, that is a letter from you to the State?

MANAGER THERRIEN:    That is correct. It is directly to Maria Ayala from State Department of Consumer Protection, Liquor Division under Freedom of Information Act requesting the information.

MAYOR ARGAZZI:        What was the date of that letter?

MANAGER THERRIEN:    July 1, 2002.

MAYOR ARGAZZI:        Mr. Silver any objection to that letter?

ATTORNEY SILVER:     No objection.

MAYOR ARGAZZI:        That will be Town's "exhibit 5". Madame Manager?

MANAGER THERRIEN:    That would be it.

MAYOR ARGAZZI:        Okay, I have a question for you. Can you again state the specific provision of the Ordinance that you relied on in revoking the license?

MANAGER THERRIEN:    I can. It would be Section 12(b)(8) A licensee, operator, or employee has knowingly allowed any live performance or conduct featuring any specified sexual activities to occur on the licensed premises;.

MAYOR ARGAZZI:        Okay, and it's your testimony that there was specified activity on the premises?

MANAGER THERRIEN:    Correct. And again, I went back to the definition which is in 1(b)(6) defining specified sexual activities and then went back to the reports from the State and found that they met the definition.

ATTORNEY SILVER:     I am going to wait until Ms. Therrien has completed.

MAYOR ARGAZZI:        Ms. Therrien, you relied on Section 1(b)(6) as the definition of specified sexual activities?

MANAGER THERRIEN:    Correct.

MAYOR ARGAZZI:        Do you at all rely on Section 2 letter (gg) for specified sexual activities?

ATTORNEY SILVER:        Excuse me, I would like to clarify something? Are you saying Section 12(b)(6) or 12(b)(8)?

MANAGER THERRIEN:       Eight.

ATTORNEY SILVER:        12(b)(8)?

MANAGER THERRIEN:       Yes. That would have been another section, I apologize.

MAYOR ARGAZZI:          Which of the two definitions of specified sexual activity did you rely on?

MANAGER THERRIEN:       Both.

MAYOR ARGAZZI:          She testified that she referred to Section 1(b)(6) for the definition of specified sexual activities on page 2. And correct me if I am wrong, did you also rely on Section 2(gg)?

MANAGER THERRIEN:       Yes.

ATTORNEY SILVER:        I object. I think that the Town Manager is presenting this case, Mayor and I would strongly urge you to allow her without interference, with guidance from her on how to present her case.

MAYOR ARGAZZI:          I realize that, but I did indicate that the Council has a right to answer questions to all witnesses and I am trying to clarify her testimony so I can completely understand what her testimony is. And the question, Madame Manager, is Section 2(gg) specified sexual activities, was that also relied upon?

MANAGER THERRIEN:       Correct, both sections.

ATTORNEY SILVER:        What section was that?

MANAGER THERRIEN:       2(gg) page 7.

ATTORNEY SILVER:        2(gg).

MAYOR ARGAZZI:          Again, can you state the conduct that you feel that you have been exposed violates or fits within either of those definitions?

MANAGER THERRIEN:       Yes, exposure touching by patrons, simulation of

8

sex display, self touching, mingling, location, exposure of breasts, breasts and genitals, display of breasts, breasts and genitals, self touching of breasts, mingling again, simulated masturbation, we have a lot or repeats of a lot of these things because there was a number of violations. Displaying of breasts, pubic hairs, genitals, and there was a number of accounts of these. Touching, caressing, fondling. Again, if anything you would be just repeating those things.

MAYOR ARGAZZI: Thank you. Any questions for the Manager from the Council?

COUNCILOR RAGAZZI: I remember hearing about lap dancing, someone had said that had happened.

MANAGER THERRIEN: Well, I am just going through the reports. I am doing this quickly. There is reference to leaving and entering a lap dance area in one place.

MAYOR ARGAZZI: Ida, what was your question again?

COUNCILOR RAGAZZI: Well, I believe it was explained in detail at our hearing. I think it should strongly be in this.

MANAGER THERRIEN: We never had a hearing on this.

COUNCILOR RAGAZZI: Not a hearing, but it came up before us before.

MANAGER THERRIEN: That was a different place. That was a different facility not this particular place.

COUNCILOR RAGAZZI: I apologize.

MAYOR ARGAZZI: Any further questions from the Council? Mr. Silver?

ATTORNEY SILVER: I want to be sure you can hear me. Madame, you testified that there were numerous violations of Sections 2(gg) as well as the definition in Section 1-6. And in that discussion you starting reading from reports which were entered into testimony and you starting talking about mingling. Is there any provision within your Ordinance which there is a violation for mingling?

MANAGER THERRIEN: No, I was just reading off some of the reports.

9

ATTORNEY SILVER:    Okay, because I would like you specifically to address the question that was given to you by the Mayor, as to which sections of your Ordinance specifically were violated by which section of the reports that you were referring to.

MANAGER THERRIEN:    Under 1(b)(6), it would be sexual physical contact between employees and patrons, manual or oral touching or fondling of specified anatomical areas whether clothed or unclothed.  Under 2(gg) acts of masturbation, I mean it goes on and on, but specifically, acts of masturbation, fondling or erotic touching of another persons genitals, pubic region, buttocks or female breasts,

ATTORNEY SILVER:    Was there anything in those reports in which there was any actual masturbation being conducted?

MANAGER THERRIEN:    I believe it was under, it was simulating, I apologize.

ATTORNEY SILVER:    So, it was simulated masturbation, there was no actual sexual act taken place, it was simulated masturbation? Is that correct?

MANAGER THERRIEN:     Correct.

ATTORNEY SILVER:    Does the reports indicate the nature of the simulated acts that came under which you alleged are in violation of your Ordinance?

MANAGER THERRIEN:    I have to go through each report.

ATRORNEY SILVER:    Take your time.

MANAGER THERRIEN:    There is nothing I could see through the actual narrative. Although they are citing the Section of the State Law.

ATTORNEY SILVER:    They are citing the State Law but there is nothing indicated within those reports which would indicate that it is anything but simulated activity.  Is that correct?

MANAGER THERRIEN:    Correct.

ATTORNEY SILVER:    And, do you have any knowledge of whether this simulated activity is part of a dance routine?

MANAGER THERRIEN:    No, I do not.

ATTORNEY SILVER:        Now, according to letter which made in exhibit 7/15 which is the revocation letter, which I believe is exhibit 4. Is it true that you revoked the licenses according to your testimony pursuant to Section 12(b)(8) of the Ordinance?

MANGER THERRIEN:        Correct.

ATTORNEY SILVER:        And, the violation then deals with exhibition of specified sexual activities as defined within the Ordinance?

MANAGER THERRIEN:       Correct.

ATTORNEY SILVER:        I would like to show you a copy of the Ordinance, and for the record, I would like you to define for the record simulated sexual activities as it relates to this Ordinance.

MANAGER THERRIEN:       Section 1(b)(6) Specified sexual activities include sexual physical contact between the employees and patrons of sexually oriented businesses and specifically "lap dancing" or manual or oral touching or fondling of specified anatomical areas, whether clothed or unclothed. Such casual sexual physical contact between strangers may result in the transmission or communicable diseases, which would be detrimental to the health of the patrons and employees of such sexually oriented business;.
                        And then in (gg) Specified Sexual Activities means simulated or actual (1) showing of human genitals in a state of sexual stimulation or arousal, (2) acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sadomasochistic abuse, fellatio or cunnilingus, (3) fondling or erotic touching of another person's genitals, pubic region, buttocks or female breasts, (4) lap dancing, or (5) excretory functions as part of or in connection with any of such activities.

ATTORNEY SILVER:        Now referring to 1(6) you indicated that such may result in the transmission of communicable diseases which would be detrimental to the health of the patrons and employees of such sexually oriented business;.
                        Now, were you involved or a member of Town government when this Ordinance was first adopted?

MANAGER THERRIEN:       Yes, I was.

ATTORNEY SILVER:        And were actively involved with Council in the preparation of this Ordinance?

MANAGER THERRIEN:    To some degree, I was at all the meetings, yes.

ATTORNEY SILVER:    Was there any evidence produced to the Council at the time of the adoption of this which would indicate that "lap dancing" or self touching would be involved in any type of communicable diseases, transmission of communicable diseases?

MANAGER THERRIEN:    Not while I was at those meetings, no.

ATTORNEY SILVER:    Now, turning to the definitions in 2(gg) I think you, in the reading of your Ordinance into the record, do you agree that simulated fondling would include the action of an entertainer that is fully clothed, as opposed to being either nude or partially nude?

MANAGE THERRIEN:    I can't really say.

ATTORNEY SILVER:    Well, what does your interpretation of the Ordinance, something in the Ordinance which talks about clothes.

MANAGER THERRIEN:    It says whether clothed or unclothed.

ATTORNEY SILVER:    Okay, and is it your interpretation that simulated fondling for example, which is related or expressed would include in fondling with the person completely clothed?

MANAGER THERRIEN:    I suppose it could be.

ATTORNEY SILVER:    Would you, in your position, feel that is a violation of this Ordinance?

MANAGER THERRIEN:    Yes, is says clothed or unclothed, yes.

ATTORNEY SILVER:    Are you familiar with the famous Michael Jackson routine, which within his dance routine and otherwise touches his groin area?

MANAGER THERRIEN:    I've seen the video.

ATTORNEY SILVER:    So you're familiar with that. And under your definition as what constitutes sexual activity, would that activity be contrary and in violation of your specific Ordinance?

MANAGER THERRIEN:    I suppose it could be.

ATTORNEY SILVER: As the Administrator, as far as determining violations of this Ordinance, do you feel that it is in violation of this Ordinance?

MANAGER THERRIEN: Yes.

ATTORNEY SILVER: I have nothing further at this time.

MAYOR ARGAZZI: Okay, thank you Mr. Silver. Ms. Therrien I give you the opportunity to redirect if you will, obviously you don't have an attorney asking you questions, but you are free to offer any additional testimony.

MANAGER THERRIEN: I don't have any at this time.

COUNCILOR ARESIMOWICZ: Bonnie, this is just a question of clarification for myself. Did you move to revoke the license of Centerfolds based upon an incident by itself of simulated masturbation?

MANAGER THERRIEN: Oh no. I had read through already, and I can read through it again, the number of items that were violated under specified sexual activities.

COUNCILOR ARESIMOWICZ: So there is no one set item?

MANGER THERRIEN: Oh no, no, no, there were a number of items.

COUNCILOR ARESIMOWICZ: Okay, thank you.

MAYOR ARGAZZI: Okay, anything further for the Town Manager? Ida.

COUNCILOR RAGAZZI: On this investigated report, it's checked off simulation of sex, but it is also checked off exposure, touching by patron. Is that correct?

MANAGER THERRIEN: Correct.

MAYOR ARGAZZI: Any further questions for the Manager? Do you have another witness?

MANAGER THERRIEN: I did, they just left. Herman could you go down there and see if you could find him.

MAYOR ARGAZZI: Do you have any other further witnesses?

13

| | |
|---|---|
| MANAGER THERRIEN: | No. He would be my only one, I don't know if he got a phone call or what. |
| MAYOR ARGAZZI: | Okay, we will take a 5-minute recess. |
| MAYOR ARGAZZI: | Please proceed. |
| MANAGER THERRIEN: | Yes, I would like to call as one of my witnesses Agent Robert J. Bailey, from the State, who was there when the incidents took place on August 19th. |
| MAYOR ARGAZZI: | Could you please spell your name? |
| AGENT BAILEY: | Yes, Robert J. B.a.i.l.e.y. |
| MAYOR ARGAZZI: | Thank you. I know you don't have an attorney I understand that , but why don't you just ask Agent Bailey what he saw on the relevant date. |
| MANAGER THERRIEN: | Okay. Perhaps you could give an overview to the Town Council on what you saw in person on August 19th at Centerfolds. |
| AGENT BAILEY: | I was not the agent in charge that night. I was one of the undercover investigators. Myself and Special Agent Boucher enter just a little after noon, approximately 12:05 or so. We entered in an undercover capacity we walked into the premises and located ourselves at the dance stage back right which would allow us a clear and unobstructive view of the entire premises to include an area which is currently known as the "lap dance" area. We seat ourselves and then began a cursory inspection of the premises, and during the brief period I observed a Caucasian female meet up with a male and walk back into this lap dance area and she immediately removed her clothing down to her g-string. And she then climbed on top of the male and began rubbing her leg up and down in his groin area not just on the surface, it was clear contact. We were seated approximately 25 to 30 feet away from the area. After a few more minutes she then got down on her knees and put her face into the male's groin area and began rubbing her face back and forth. She continued this back and forth for a few minutes, then she concluded, dressed herself and then returned to the bar area. The male moved into the crowd. After several more minutes the same female appeared on the stage area in front us |

14

and she then proceeded from patron to patron, who displayed currency, on the edge of hollywood and she would dance briefly, she removed all of her clothing down to her g-string and her routine was, she would kneel in front of the patron then caress and touch her exposed breasts and then she would sit on her buttocks with her feet close to the patron and she would pull her g-string garment to side exposing completely her genital area. She would then return it, lean forward remove the currency and proceed to the next patron showing currency. She concluded her act after several minutes and went off the stage and my partner observed the female himself and then we exited, met up with the Support Contingency of Liquor Control and local officers. We re-entered and then I interviewed the dancer that I observed, she was later identified as Ms. Sanders. I obtained a photograph of her as well as the lap dance area. Further violations were observed upon entering by other agents as well as what we refer to as housekeeping different sort of violations.

MANAGER THERRIEN:    Agent Bailey what you visualize, no one else but just yourself, would any of that that you saw include sexual physical contact between employee and patrons of sexually oriented businesses specifically including lap dancing or manual or oral touching or fondling of specified anatomical areas whether-clothed or unclothed?

AGENT BAILEY:    By Liquor Control definition she was performing a lap dance.

MANAGER THERRIEN:    Also it's mention in Section 2(gg) lap dancing. And you did observe under your definition of lap dancing that it was occurring?

AGENT BAILEY:    That's correct.

MANAGER THERRIEN:    That's the only questions that I have.

MAYOR ARGAZZI:    Any further testimony from this witness?

MANAGER THERRIEN:    Not at this point.

MAYOR ARGAZZI:    Okay, Mr. Silver.

ATTORNEY SILVER:    Agent Bailey is it your testimony that you only observed this one dancer that you did not observe any other dancers doing

15

|                    | any other activities at the time you were at the premises? |
|--------------------|------------------------------------------------------------|
| AGENT BAILEY:      | No, I did observe them although I focused my attention on this dancer. |
| ATTORNEY SILVER:   | And you said "lap dance" as defined by Liquor Control. Was the dancer actually sitting on the patron's lap? |
| AGENT BAILEY:      | She was leaning on his lap. |
| ATTORNEY SILVER:   | What do you mean leaning on his lap? |
| AGENT BAILEY:      | There was physical contact. She did not have all her weight on him, she had one foot on, she was leaning and like I said she was rubbing one leg up and down his groin area. |
| ATTORNEY SILVER:   | I have nothing further at this point. |
| MAYOR ARGAZZI:     | Are there questions? Mr. Bailey, one question I have did you have the opportunity to observe a manager or general manager of the facility when you were in the facility? |
| AGENT BAILEY:      | That was not my function. No, I focused my attention on the dancer. There were persons in charge moving about at all times, we did notice that. |
| MAYOR ARGAZZI:     | How did you know they were in charge? |
| AGENT BAILEY:      | They were speaking to staff, they were looking at the patrons, because patrons are not allowed to touch as a rule around the hollywood, around that dance area. In fact one of the males came over to my partner, Special Agent Boucher to remove his hat because hats are not allowed. He had it forward, they made him remove it. |
| MAYOR ARGAZZI:     | From your observation is it your opinion that these people that this particular man was a manager or some type of person in authority? Do you have any first hand knowledge of that, did you talk to this person and ask specifically if he was a manager? |
| AGENT BAILEY:      | No, negative. |
| MAYOR ARGAZZI:     | Okay, this person, is this one person that you saw do this or did you see more than one act as if they were in charge? |

16

AGENT BAILEY:          No, there were security or bouncers stationed, seated on chairs around the area.

MAYOR ARGAZZI:       But this one specific person you felt was the manager?

AGENT BAILEY:          No, he was an employee, that is a far as I can say, he clearly had some authority to control patrons.

MAYOR ARGAZZI:       Did this individual have a clear view of both of the incidents that you saw, the lap dance incident as well as the incident on the stage?

AGENT BAILEY:          Yes he did.

MAYOR ARGAZZI:       And you saw him directly with your own eyes being able to see those areas?

AGENT BAILEY:          I could see both areas from the seat of my position and he was standing to my right. He could clearly see them.

MAYOR ARGAZZI:       Did these incidents continue pass the point where you could tell he could see these incidents occur? In other words, while these incidents were occurring was this manager or this person was he able to see these areas, did he do anything to stop them, or did this activity continue?

AGENT BAILEY:          He made no activity to stop them while I was observing. Nor did any other employees.

MAYOR ARGAZZI:       Okay, Joe.

COUNCILOR ARESIMOWICZ:  Just one further question for clarification. You said that there was a bouncer, I think you used bouncers, strategically placed around the place?

AGENT BAILEY:          Yes.

COUNCILOR ARESIMOWICZ:  Is it your opinion, in your line of work, that they place so that they would have direct oversight of all different areas of the facility?

ATTORNEY SILVER:      I object. There is no foundation that this gentlemen knows how to answer that question, that he has that expertise to be able to determine.

17

COUNCILOR ARESIMOWICZ:  The officer said strategically placed, I would like his definition of strategically placed. Can you define what you meant by strategically placed?

AGENT BAILEY:    From where I was seated there were bouncers at the door. Employees at the door, as well as across the barroom at one corner there is a wall then it opened up to back where there is a lap dance area and there is a bouncer seated like on a bar stool, so he's higher, he can observe the activity over the dance. And if he looked to his left, that bouncer could clearly see the lap dancer area.

COUNCILOR ARESIMOWICZ: So by "strategically placed" you meant being able to see different areas.

AGENT BAILEY:    Correct.

MAYOR ARGAZZI:    Joe, any other questions? Mr. Sullivan.

CORPORATION COUNSEL:  I believe this witness has testified that he concentrated on …(unclear)…

AGENT BAILEY:    Yes that is correct.

CORPORATION COUNSEL:  I have as part of exhibit 2 …unclear.. there is an actual formal report regarding this?

AGENT BAILEY:    I did.

CORPORATION COUNSEL:  At the bottom of the report it asks, it states that the person in charge …other than performer ..unclear.. it marked yes…and the name says Richard Derobbio, General Manager.

AGENT BAILEY:    That's correct, that is written there but if I could add it is not my writing, it is Special Agent Colla's writing, and I did check yes and if I may at this point say this person was the gentleman who I observed, who may have been the person who came over and told my partner to remove the hat. I just didn't identify him because I was interviewing the dancer.

CORPORATION COUNSEL: Are you testifying that's Agent Colla's handwriting?

AGENT BAILEY:    Yes, that is his handwriting. He's the Agent in charge, he wrote up the whole file.

MAYOR ARGAZZI:    Okay, Ida question.

COUNCILOR RAGAZZI:    After you observed this you went out to the person in charge. Now he came in, did he ascertain who was in charge?

AGENT BAILEY:    Yes, he did. That's per routine. We switch back and forth from whoever is in charge, who is the writer of the report. I have done that before. That is the first thing you do. You find out who's the boss of the night.

COUNCILOR RAGAZZI:    So he would say that there was someone there?

AGENT BAILEY:    Yes, in fact that person would sign the cover sheet of the report. I could tell you who that was if you wish.

MAYOR ARGAZZI:    Further questions for Mr. Bailey?

AGENT BAILEY:    Richard Derobbio, signed the form himself.

COUNCILOR RAGAZZI:    That's your agent.

AGENT BAILEY:    No, the Agent is Colla, Special Agent Phil Colla. That is the fellow that was deemed to be in charge that night.

COUNCILOR RAGAZZI:    Thank you.

MAYOR ARGAZZI:    Further questions from the Council for Mr. Bailey?

ATTORNEY SILVER:    I have some further questions.

MAYOR ARGAZZI:    If there are no further questions from the Council, I will allow redirect by the witness or by the Manager, if there are none then I will allow additional cross-examination.

MANAGER THERRIEN:    I have none.

ATTORNEY SILVER:    Agent Bailey did you personally ascertain the function of any of the individuals that you claimed were bouncers?

AGENT BAILEY:    No.

ATTORNEY SILVER:    Did you determine whether or not they were employees?

AGENT BAILEY:          I determined in my own mind because they had a different shirt on that said Centerfolds or employee or bouncer, something like that.

ATTORNEY SILVER:       But you did not ask them what their capacity was?

AGENT BAILEY:          No, I did not.

ATTORNEY SILVER:       Did you inquire who was the manager on duty?

AGENT BAILEY:          No, I did not.

ATTORNEY SILVER:       So you have no knowledge who was the manager on duty?

AGENT BAILEY:          No, I don't.

ATTORNEY SILVER:       And did you have any knowledge if there was a manager on duty had any knowledge of the activity that you testified to?

AGENT BAILEY:          No I don't.

ATTORNEY SILVER:       So, is it fair to say that it is merely your surmise that a person of managerial capacity had knowledge of what went on as to what you testified to?

AGENT BAILEY:          Beyond that, I believe that night by looking at my notes, I spoke to Special Agent Colla and through that query I must have said that gentleman observed, he was here and he then further filled out his name at the bottom, that is the only way that could have happened.

ATTORNEY SILVER:       But you don't know what his capacity was?

AGENT BAILEY:          No, I don't know his official capacity.

ATTORNEY SILVER:       It could be a bouncer, it could be a dishwasher, it could have any capacity within the confines of that facility.

AGENT BAILEY:          Yes, as far as I know I do not know what his capacity was.

ATTORNEY SILVER:       I have nothing further.

MAYOR ARGAZZI:         Ida.

COUNCILOR RAGAZZI: You state that your superior officer had received the name of Richard Derobbio as the man in charge. He signed the statements.

AGENT BAILEY: He did not sign the statement. He signed the cover sheet, which only means he received a copy of the report, doesn't mean he agreed to it, doesn't mean he agreed to any of it just meant that he received a copy. These are crated with a copy on the back of it, so we would fill this out and he would sign it and get a copy of it that's it.

COUNCILOR RAGAZZI: What I am getting at is someone with authority asked who was in charge and the name that was given was Richard Derobbio. So that someone in authority signed the statement for the Liquor Control Commission that that man was in charge at that investigation.

AGENT BAILEY: That's correct.

COUNCILOR RAGAZZI: Although personally you did not ask the man his name from the reports from your department you would say that that's correct?

AGENT BAILEY: Yes.

COUNCILOR RAGAZZI: Thank you.

MAYOR ARGAZZI: Again Mr. Bailey can you explain how, I know you said this before, but how did you determine in your mind that this individual claimed to have authority and witnessed these two things? What made you think that this person was the manager or had some type of authority?

AGENT BAILEY: The person who signed this is who you are referring to?

MAYOR ARGAZZI: No the person who you witnessed walk around and apparently give orders to other employees.

AGENT BAILEY: I don't recall exactly if he had a shirt on or he came and spoke to Special Agent Boucher who was seated directly to my right and he said "remove your hat, you cannot wear hats here." He gave him a direct order as if someone in a position of authority. It wasn't as a friend, or it's bothering me, he said that is our rules remove your hat. Special Agent Boucher capitulated and removed the hat.

| | |
|---|---|
| MAYOR ARGAZZI: | Do you know if there was any person above that person that night? |
| AGENT BAILEY: | I don't know that. |
| MAYOR ARGAZZI: | Any further questions from the Council? Joan. |
| COUNCILOR WARD: | I have just one question. Agent Bailey, how long have you been doing this as an undercover agent? |
| AGENT BAILEY: | An agent or my whole career? 22 years now, Liquor Control for 10. |
| COUNCILOR WARD: | Thank you. |
| MAYOR ARGAZZI: | Any further questions? Mr. Sullivan, Town Manager, Mr. Silver. |
| ATTORNEY SILVER: | I have nothing. |
| MAYOR ARGAZZI: | Okay, you may step down, thank you Mr. Bailey. Town Manager do you have any further witnesses? |
| MANAGER THERRIEN: | No, I do not. |
| MAYOR ARGAZZI: | Mr. Silver. |
| ATTORNEY SILVER: | Yes, I would request the Town Manager. |
| ATTORNEY SILVER: | You have indicated in previous testimony this evening that you were obligated under Section 12 to revoke the license as a result of activity which you had investigated. Is that correct? |
| MANAGER THERRIEN: | Correct. |
| ATTORNEY SILVER: | And did you take into consideration that you had an opportunity to suspend the license? |
| MANAGER THERRIEN: | That is not the way I interpret the Section 12. |
| ATTORNEY SILVER: | So it is your interpretation that regardless of the language in 12(a) dealing with suspensions that you were required under Section 12(b) to completely revoke the license rather than consider a suspension? |

22

| | |
|---|---|
| MANAGER THERRIEN: | Correct. I went by 12(b) which says shall revoke, and it list a number of items of which one of them it is. |
| ATTORNEY SILVER: | I have nothing further. |
| MAYOR ARGAZZI: | Madame Manager you are free to offer rebuttal evidence or clarify any questions offered. |
| MANAGER THERRIEN: | I think just in kind of a summary again.. |
| MAYOR ARGAZZI: | Not a summary. If you had an attorney you would be able to offer, you would be cross-examined by your attorney response to questions presented by respondent. Do you wish to clarify any of the questions? |
| MANAGER THERRIEN: | No. |
| MAYOR ARGAZZI: | Mr. Silver. |
| ATTORNEY SILVER: | I have nothing, we rest. One final thing however, given the nature of this hearing from past hearings obviously until I was here this evening I was not sure there was no discovery as to the type of evidence what was going to be put forth. I would like to request one week to submit some written comments. To have an opportunity to respond to what came forth this evening. I think it is only fair give the lack of discovery. |
| MAYOR ARGAZZI: | Okay, Mr. Silver, I agree with you. We can continue this, our next Town Council meeting is September 10th. We can reconvene the public hearing prior to that meeting at 7:00. We can make it 6:00 or 6:30 if you like, does that give you enough time to submit written comments? |
| ATTORNEY SILVER: | Yes, it is plenty of time. I'll have something submitted by next Friday to the Town Manager for submittal to members of Council. |
| MAYOR ARGAZZI: | Okay, if you could have it by, the packets go out Friday morning. |
| ATTORNEY SILVER: | You close early, you close at 12 noon. |
| MANAGER THERRIEN: | It is not next week it is the week after, as long as I have it by one week from tomorrow. |

ATTORNEY SILVER:  Okay that is fine.

MAYOR ARGAZZI:  Okay, then Mr. Silver if you could have your brief or your response in by Friday, September 6th , that will be the next time the packets go out. I would like each Town Council member be able to review your work.

ATTORNEY SILVER:  It will be there well before September 6th.

CORPORATION COUNSEL: (unclear).....object to the nature of some of those reports.

ATTORNEY SILVER:  I waive any rights, at this point I am not going to subpoena anyone or go forward with any additional information.

CORPORATION COUNSEL: You are waiving....(unclear)

ATTORNEY SILVER:  I agree to the closing of the hearing as far as evidentiary basis is concerned.

COUNCILOR ARESIMOWICZ: So there is no objection to any of the reports?

ATTORENY SILVER:  Although I am not partaking in my opportunity to subpoena other people.

MAYOR ARGAZZ:  You are not waiving that right?

ATTORNEY SILVER:  No, I am not waiving that right.

MAYOR ARGAZZI:  My intent is not to close the hearing at this point, I would like to keep the hearing open, allow you to submit your written brief to us, but keep the hearing open prior to our next meeting if there are any further witnesses, for either side, then I will allow it subject to reasonableness.

ATTORNEY SILVER:  Thank you. So September 10th at 6:30.

MANAGER THERRIEN:  If that is what Council wishes.

ATTORNEY SILVER:  Why don't you contact me if any different.

MAYOR ARGAZZI:  September 10th at 6:30 we will reconvene the public hearing. So we are just reconvening the public hearing at that point.

COUNCILOR CIMADON:  Just so you know, I may not be able to be here. I have an obligation at work on September 10th. unless I can get out of it but I don't know at this point. I need to check with

24

|  | my principal they changed dates on me for open house. I am not sure I am able to be here at this point. |
|---|---|
| MAYOR ARGAZZI: | If you want we can continue that to another date, but you are not certain. |
| COUNCILOR CIMADON: | No, I am not certain. |
| MAYOR ARGAZZI: | Why don't we do that, we will reconvene it to 6:30 on September 10th. |
| ATTORNEY SILVER: | Excuse me, could we hold up for one second please. I just want to confer with my client. |
| MAYOR ARGAZZI: | Yes. |
| ATTORNEY SILVER: | I think there is some confusion about keeping the hearing opened. I think it was my suggestion to have final comments, that the testimony that was heard tonight, would close this hearing as far as testimony is concerned, because I can't comment to things that I am not aware of, so, if there is no further evidence, and this is not your call, this is other peoples calls, I would ask that the hearing be closed as far as evidence is concerned, and that we would just be doing is making a written statement. Is that correct? |
| CORPORATION COUNSEL: | We want to leave the hearing opened, to accept additional evidence which would include any evidence. |
| ATTORNEY SILVER: | I am not going to introduce any evidence. All I am going to be doing is making argument, I am not producing. |
| CORPORATION COUNSEL: | It is still part of the record. |
| ATTORNEY SILVER: | It's part of the record, but I want to know that the hearing, we had evidence today, when the case is over the case is over. |
| MAYOR ARGAZZI: | Mr. Silver am I going to leave the hearing opened. If there is additional evidence we will allow you to make a final statement regarding any additional evidence that is presented. It also offers you the opportunity to present any additional evidence you may wish. |
| ATTORNEY SILVER: | Well, at that point unless someone else, I am going to |

close it right now.  I can do it orally rather than written.
I am not going to, when a case is closed it's closed.
Lets not have a continuing saga of this matter.  The Town
was here, they presented their evidence, I rest it.  We should
put some finality to this.  And if there is a question of my
preparing written arguments is going to keep it open, what
I will do right now is I will give final argument right now
orally rather than by written statement.

MAYOR ARGAZZI:          Does someone have a question?

COUNCILOR ARESIMOWICZ:  It's not really a question.  When I walked up to you I
                        said it's getting late, we have folks here in the audience, this
                        is part of a Town Meeting, we have our Town Meeting
                        business. I did not really think it was going to take this long
                        and it has.  If nothing else we are just going postpone to
                        another day is my suggestion because we have numerous
                        people in the audience that are here for numerous other
                        business, the hour is getting late, and I don't want to be here
                        until midnight.

ATTORNEY SILVER:        I appreciate Councilor's comments but I am here for a
                        purpose, and it is a serious purpose.  Perhaps it should have
                        been scheduled at separate date then before a regular
                        meeting.

MAYOR ARGAZZI:          Okay, thank you.  Ms. Therrien do you have any further
                        evidence to present?

MANAGER THERRIEN:       No, I do not.

MAYOR ARGAZZI:          Mr. Silver are presenting any further evidence?

ATTORNEY SILVER:        No, absolutely not.

CORPORATION COUNSEL:  I believe leaving the hearing open is to simply accept.

MAYOR ARGAZZI:          Yes, that is what we will be doing.  The hearing will
                        continue at 6:30 on September 10th for the sole purpose
                        of final arguments as well as accepting your final brief
                        if any.  There will be no additional testimony.

ATTORNEY SILVER:        Fine. Thank you.

MAYOR ARGAZZI:          The hearing therefor is hereby recessed until September 10th
                        at 6:30 same place.

26