EXHIBIT 3

United States District Court,
W.D. New York.
Thomas G. BROWNELL, Barrell of Dolls Saloon, Inc., Plaintiffs,
v.
CITY OF ROCHESTER, New York, Defendant.
Chuck Zicari, C & A Playmates, Inc., Plaintiffs,
v.
City of Rochester, New York, Defendant.
S.J.G. of Rochester, Inc., d/b/a Mirage, Plaintiff,
v.
City of Rochester, New York, Defendant.
Nos. 00-CV-6597L, 00-CV-5698L, 01-CV-6012L.
May 14, 2001.

Owners of sexually oriented businesses sued municipality, seeking preliminary injunction barring enforcement of ordinance imposing licensing requirement and regulating nude dancing. The District Court, Larimer, Chief Judge, held that: (1) owners had standing to challenge regulations on dancing; (2) provision barring "specified sexual activities" was impermissible restriction on expression, in violation of First Amendment; (3) regulations not affecting expression were valid; (4) only those license requirements consistent with government objective of regulating secondary effects of sexually oriented businesses were valid; and (5) unconstitutional provisions could be severed from balance of ordinance.
Order accordingly.

West Headnotes

[1] KeyCite Notes

⚖92 Constitutional Law
  ⚖92II Construction, Operation, and Enforcement of Constitutional Provisions
    ⚖92k41 Persons Entitled to Raise Constitutional Questions
      ⚖92k42.2 Particular Questions or Grounds of Attack
        ⚖92k42.2(1) k. In General. Most Cited Cases

Owners of sexually oriented businesses had standing to challenge on First Amendment grounds municipal ordinance requiring licensing of activities, without first being required to apply for and be denied license, due to broad discretion delegated to chief of police in granting licenses. U.S.C.A. Const.Amend. 1.

[2] KeyCite Notes

⚖92 Constitutional Law
  ⚖92II Construction, Operation, and Enforcement of Constitutional Provisions
    ⚖92k41 Persons Entitled to Raise Constitutional Questions
      ⚖92k42.2 Particular Questions or Grounds of Attack
        ⚖92k42.2(1) k. In General. Most Cited Cases

Owners of sexually oriented businesses had standing to challenge municipal ordinance licensing those businesses, on grounds that questions required to be answered, including questions regarding any criminal record, violated First Amendment rights by having chilling effect on prospective applicants, without regard to whether answers to questions would disqualify applicants from obtaining license. U.S.C.A. Const.Amend. 1.

[3] KeyCite Notes 

🔑92 Constitutional Law
   🔑92II Construction, Operation, and Enforcement of Constitutional Provisions
      🔑92k41 Persons Entitled to Raise Constitutional Questions
         🔑92k42.2 Particular Questions or Grounds of Attack
            🔑92k42.2(1) k. In General. Most Cited Cases

Owners of sexually oriented businesses had standing to challenge municipal ordinance regulating nude dancing offered on their premises, even though owners were not performers; owners had independent First Amendment right to sponsor adult entertainment, and their interests were similar to those of performers. U.S.C.A. Const.Amend. 1.

[4] KeyCite Notes

🔑212 Injunction
   🔑212IV Preliminary and Interlocutory Injunctions
      🔑212IV(A) Grounds and Proceedings to Procure
         🔑212IV(A)2 Grounds and Objections
            🔑212k138.1 k. In General. Most Cited Cases

Party seeking preliminary injunction must demonstrate irreparable harm should injunction not be granted, and either likelihood of success on merits, or sufficiently serious questions going to merits and balance of hardships, constituting fair grounds for litigation, tipping decidedly toward party seeking injunctive relief.

[5] KeyCite Notes

🔑212 Injunction
   🔑212IV Preliminary and Interlocutory Injunctions
      🔑212IV(A) Grounds and Proceedings to Procure
         🔑212IV(A)3 Subjects of Relief
            🔑212k138.45 Public Officers, Boards and Municipalities; Schools and Colleges
               🔑212k138.46 k. In General. Most Cited Cases

When party moving for preliminary injunction seeks to stay governmental action taken in public interest pursuant to statutory or regulatory scheme, movant must satisfy likelihood of prevailing on merits requirement; alternative, of showing that fair grounds for litigation exists, is not available.

[6] KeyCite Notes 

🔑78 Civil Rights
   🔑78III Federal Remedies in General
      🔑78k1449 Injunction
         🔑78k1457 Preliminary Injunction
            🔑78k1457(7) k. Other Particular Cases and Contexts. Most Cited Cases
               (Formerly 78k268)

Owners of sexually oriented businesses satisfied irreparable injury requirement, for preliminary injunction barring enforcement of ordinance requiring licensing and regulating nature of performances, through allegations that ordinance violated their First Amendment rights. U.S.C.A.

Const.Amend. 1.

[7] KeyCite Notes

⇒92 Constitutional Law
   ⇒92V Personal, Civil and Political Rights
      ⇒92k90 Freedom of Speech and of the Press
         ⇒92k90.4 Obscenity and Pornography
            ⇒92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

Nude dancing and erotic materials are not accorded full spectrum of First Amendment protection. U.S.C.A. Const.Amend. 1.

[8] KeyCite Notes

⇒92 Constitutional Law
   ⇒92V Personal, Civil and Political Rights
      ⇒92k90 Freedom of Speech and of the Press
         ⇒92k90.4 Obscenity and Pornography
            ⇒92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

Non-obscene nude dancing may be regulated, consistent with First Amendment, so long as regulations are aimed not at suppressing or restricting free expression, but at curbing undesirable secondary effects associated with businesses featuring nude dancing. U.S.C.A. Const.Amend. 1.

[9] KeyCite Notes

⇒92 Constitutional Law
   ⇒92V Personal, Civil and Political Rights
      ⇒92k90 Freedom of Speech and of the Press
         ⇒92k90.4 Obscenity and Pornography
            ⇒92k90.4(1) k. In General. Most Cited Cases

Content-neutral time, place and manner municipal regulation of sexually oriented businesses is permissible, consistent with First Amendment, if substantial government interest is served and allowance is made for reasonable alternative avenues of communication. U.S.C.A. Const.Amend. 1.

[10] KeyCite Notes

⇒92 Constitutional Law
   ⇒92V Personal, Civil and Political Rights
      ⇒92k90 Freedom of Speech and of the Press
         ⇒92k90.1 Particular Expressions and Limitations
            ⇒92k90.1(1) k. In General. Most Cited Cases

Under United States Supreme Court's *O'Brien* decision, conduct involving expressive conduct of non-speech nature may be subjected to government regulation, if regulation is within constitutional power of government, furthers important or substantial government interest unrelated to suppression of free expression, and incidental restriction on alleged First Amendment freedoms is no greater than is essential to furtherance of government interest. U.S.C.A. Const.Amend. 1.

[11] KeyCite Notes

🔑92 Constitutional Law
    🔑92V Personal, Civil and Political Rights
        🔑92k90 Freedom of Speech and of the Press
            🔑92k90.4 Obscenity and Pornography
                🔑92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

Provisions of municipal ordinance, regulating nude dancing on premises of sexually oriented businesses, challenged by owners on First Amendment grounds, were to be analyzed under standard announced by Supreme Court in *O'Brien* case, to extent that ordinance had impact upon expressive conduct, resulting in requirement that regulation be no greater than was essential to furtherance of government's interest. U.S.C.A. Const.Amend. 1.

KeyCite Notes
[12]

🔑92 Constitutional Law
    🔑92V Personal, Civil and Political Rights
        🔑92k90 Freedom of Speech and of the Press
            🔑92k90.4 Obscenity and Pornography
                🔑92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

Provisions of municipal ordinance, regulating aspects of nude dancing on premises of sexually oriented businesses other than those involving expression, challenged by owners on First Amendment grounds, were to be analyzed as time, place and manner restrictions, that could not be substantially broader than necessary to achieve government's interest in regulating secondary effects of activity. U.S.C.A. Const.Amend. 1.

[13] KeyCite Notes

🔑92 Constitutional Law
    🔑92V Personal, Civil and Political Rights
        🔑92k90 Freedom of Speech and of the Press
            🔑92k90.1 Particular Expressions and Limitations
                🔑92k90.1(4) k. Use of Streets and Public Places; Licenses and Permits. Most Cited Cases

Licensing system that in effect requires government approval before one may engage in activity protected by First Amendment is prior restraint, invalid if it places unbridled discretion in hands of government official or agency, or does not limit time within which decisionmaker must issue license. U.S.C.A. Const.Amend. 1.

[14] KeyCite Notes

🔑92 Constitutional Law
    🔑92V Personal, Civil and Political Rights
        🔑92k90 Freedom of Speech and of the Press
            🔑92k90.4 Obscenity and Pornography
                🔑92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

Ordinance requiring that license be obtained, prior to performance of nude dancing on premises of sexually oriented business, could only be upheld upon showing that it was narrowly tailored to serve

significant government interest unrelated to suppression of free expression, and left alternate channels of communication. U.S.C.A. Const.Amend. 1.

[15] KeyCite Notes 

🔑92 Constitutional Law
  🔑92V Personal, Civil and Political Rights
    🔑92k90 Freedom of Speech and of the Press
      🔑92k90.4 Obscenity and Pornography
        🔑92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

🔑376 Theaters and Shows
  🔑376k3.50 k. Dancing. Most Cited Cases

Provisions of municipal ordinance regulating nude dancing on premises of sexually oriented businesses, prohibiting "specified sexual activities" including erotic touching, violated First Amendment right of owners to provide expressive entertainment; prohibited conduct was clearly expressive, and prohibition did nothing to further purpose of ordinance, which was to control secondary consequences arising from nude dancing. U.S.C.A. Const.Amend. 1.

KeyCite Notes
[16]

🔑92 Constitutional Law
  🔑92V Personal, Civil and Political Rights
    🔑92k90 Freedom of Speech and of the Press
      🔑92k90.4 Obscenity and Pornography
        🔑92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

🔑376 Theaters and Shows
  🔑376k3.50 k. Dancing. Most Cited Cases

Provisions of municipal ordinance, regulating nude dancing on premises of sexually oriented businesses, dealing with non-expressive aspects of dancing, such as separation between dancers and audience and prohibition on tipping of performers, were legitimate time, place and manner restrictions on First Amendment rights of owners, advancing government interest in controlling secondary aspects of dancing, such as prostitution. U.S.C.A. Const.Amend. 1.

[17] KeyCite Notes

🔑92 Constitutional Law
  🔑92V Personal, Civil and Political Rights
    🔑92k90 Freedom of Speech and of the Press
      🔑92k90.4 Obscenity and Pornography
        🔑92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

🔑376 Theaters and Shows
  🔑376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance could deny license to operate sexually oriented business to applicant convicted of prostitution, obscenity and related offenses, and other enumerated sex offenses, without violating First Amendment rights of applicant; applicant's past history created possibility of involvement in further sexually related criminal activity arising out of operation of business. U.S.C.A. Const.Amend.

1.

[18] KeyCite Notes

🔑92 Constitutional Law
   🔑92V Personal, Civil and Political Rights
      🔑92k90 Freedom of Speech and of the Press
         🔑92k90.4 Obscenity and Pornography
            🔑92k90.4(1) k. In General. Most Cited Cases

Municipal ordinance could not, consistent with First Amendment, deny license to operate sexually oriented business to applicant convicted of crimes unrelated to nature of proposed business, including enterprise corruption, money laundering, gambling offenses, or drug offenses. U.S.C.A. Const.Amend. 1.

[19] KeyCite Notes

🔑92 Constitutional Law
   🔑92V Personal, Civil and Political Rights
      🔑92k90 Freedom of Speech and of the Press
         🔑92k90.4 Obscenity and Pornography
            🔑92k90.4(1) k. In General. Most Cited Cases

Municipal ordinance could provide for denial of license to operate sexually oriented business, if municipality had revoked prior license within past two years, without violating First Amendment rights of business owners. U.S.C.A. Const.Amend. 1.

[20] KeyCite Notes

🔑92 Constitutional Law
   🔑92V Personal, Civil and Political Rights
      🔑92k90 Freedom of Speech and of the Press
         🔑92k90.4 Obscenity and Pornography
            🔑92k90.4(1) k. In General. Most Cited Cases

🔑376 Theaters and Shows
   🔑376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance could not provide for denial of license to operate sexually oriented business, consistent with First Amendment, to owners who had prior license application rejected during previous year; rejection could be based on many factors, such as being underage, or failing to pay fees, which did not reflect propensity to violate ordinance. U.S.C.A. Const.Amend. 1.

[21] KeyCite Notes

🔑92 Constitutional Law
   🔑92V Personal, Civil and Political Rights
      🔑92k90 Freedom of Speech and of the Press
         🔑92k90.4 Obscenity and Pornography
            🔑92k90.4(1) k. In General. Most Cited Cases

🗝376 Theaters and Shows
   🗝376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance imposing licensing requirement on owners of sexually oriented businesses did not violate their First Amendment rights, by granting to police chief excessive discretion whether to issue license; chief was required to issue license within 30 days, unless specified disabling condition was found to exist. U.S.C.A. Const.Amend. 1.

[22] KeyCite Notes

🗝92 Constitutional Law
   🗝92V Personal, Civil and Political Rights
      🗝92k90 Freedom of Speech and of the Press
         🗝92k90.4 Obscenity and Pornography
            🗝92k90.4(1) k. In General. Most Cited Cases

🗝376 Theaters and Shows
   🗝376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance requiring licensing of sexually oriented businesses violated First Amendment, by acquiring all persons with 20% or more interest in applicant other than individual to sign application and satisfy licensee requirements, without regard to whether person had supervisory responsibilities. U.S.C.A. Const.Amend. 1.

[23] KeyCite Notes

🗝92 Constitutional Law
   🗝92V Personal, Civil and Political Rights
      🗝92k90 Freedom of Speech and of the Press
         🗝92k90.4 Obscenity and Pornography
            🗝92k90.4(1) k. In General. Most Cited Cases

🗝376 Theaters and Shows
   🗝376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance licensing sexually oriented businesses could require that officers and directors of corporate applicants sign applications and satisfy license requirements, without violating their First Amendment rights, regardless of whether officers or directors were involved in daily operation of business. U.S.C.A. Const.Amend. 1.

[24] KeyCite Notes

🗝92 Constitutional Law
   🗝92V Personal, Civil and Political Rights
      🗝92k90 Freedom of Speech and of the Press
         🗝92k90.4 Obscenity and Pornography
            🗝92k90.4(1) k. In General. Most Cited Cases

🗝376 Theaters and Shows
   🗝376k3 k. Licenses and Taxes in General. Most Cited Cases

Ordinance imposing licensing requirement on owners of sexually oriented businesses could require

applicants to provide information related to eligibility requirements or to disqualifying factors, without violating their First Amendment rights. U.S.C.A. Const.Amend. 1.

[25] KeyCite Notes

⚖92 Constitutional Law
   ⚖92V Personal, Civil and Political Rights
      ⚖92k90 Freedom of Speech and of the Press
         ⚖92k90.4 Obscenity and Pornography
            ⚖92k90.4(1) k. In General. Most Cited Cases

⚖376 Theaters and Shows
   ⚖376k3 k. Licenses and Taxes in General. Most Cited Cases

First Amendment rights of sexually oriented businesses were not violated by municipal ordinance requirement that application for license be submitted under oath. U.S.C.A. Const.Amend. 1.

[26] KeyCite Notes

⚖92 Constitutional Law
   ⚖92V Personal, Civil and Political Rights
      ⚖92k90 Freedom of Speech and of the Press
         ⚖92k90.4 Obscenity and Pornography
            ⚖92k90.4(1) k. In General. Most Cited Cases

⚖376 Theaters and Shows
   ⚖376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance imposing licensing requirement on sexually oriented businesses could require corporate applicants to list name and date of incorporation, provide evidence that corporation is in good standing under laws of its state of incorporation, give names and capacity of all officers and directors, and provide name of registered corporate agent and address of the registered office for service of process, without violating owners' First Amendment rights; requirement was related to legitimate purpose of preventing businesses from being run by phony corporations. U.S.C.A. Const.Amend. 1.

[27] KeyCite Notes

⚖92 Constitutional Law
   ⚖92V Personal, Civil and Political Rights
      ⚖92k90 Freedom of Speech and of the Press
         ⚖92k90.4 Obscenity and Pornography
            ⚖92k90.4(1) k. In General. Most Cited Cases

⚖376 Theaters and Shows
   ⚖376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance requirement, that applicant for license to operate sexually oriented business disclose any conviction for enterprise corruption, money laundering, gambling offenses, or drug offenses, violated First Amendment rights of applicants, as disclosure was not relevant to fitness to conduct licensed business. U.S.C.A. Const.Amend. 1.


[28] KeyCite Notes

⇌92 Constitutional Law
  ⇌92V Personal, Civil and Political Rights
    ⇌92k90 Freedom of Speech and of the Press
      ⇌92k90.4 Obscenity and Pornography
        ⇌92k90.4(1) k. In General. Most Cited Cases

⇌376 Theaters and Shows
  ⇌376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance could require applicants for license to operate sexually oriented businesses to disclose whether they have had similar license denied or revoked by another municipality, without violating applicants' First Amendment rights. U.S.C.A. Const.Amend. 1.

[29] KeyCite Notes

⇌92 Constitutional Law
  ⇌92V Personal, Civil and Political Rights
    ⇌92k90 Freedom of Speech and of the Press
      ⇌92k90.4 Obscenity and Pornography
        ⇌92k90.4(1) k. In General. Most Cited Cases

⇌376 Theaters and Shows
  ⇌376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance imposing license requirement on owners of sexually oriented businesses could not require applicants to furnish identification information, beyond name, mailing address, and social security number, without violating First Amendment. U.S.C.A. Const.Amend. 1.

[30] KeyCite Notes

⇌92 Constitutional Law
  ⇌92V Personal, Civil and Political Rights
    ⇌92k90 Freedom of Speech and of the Press
      ⇌92k90.4 Obscenity and Pornography
        ⇌92k90.4(1) k. In General. Most Cited Cases

⇌376 Theaters and Shows
  ⇌376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance imposing license requirement on employees and managers of sexually oriented businesses could require that applicant furnish information regarding height, weight, hair and eye color, social security number, and four photographs of face, without violating applicant's First Amendment rights. U.S.C.A. Const.Amend. 1.

[31] KeyCite Notes

⇌92 Constitutional Law
  ⇌92V Personal, Civil and Political Rights
    ⇌92k90 Freedom of Speech and of the Press

☞92k90.4 Obscenity and Pornography
　☞92k90.4(1) k. In General. Most Cited Cases

☞376 Theaters and Shows
　☞376k3 k. Licenses and Taxes in General. Most Cited Cases

Municipal ordinance imposing license requirement on managers and employees of sexually oriented businesses violated applicants' First Amendment rights by requiring residence address, and supplemental identification card information; requirements were intrusive and bore little if any relevance to any substantial government interest. U.S.C.A. Const.Amend. 1.

[32] KeyCite Notes

☞92 Constitutional Law
　☞92V Personal, Civil and Political Rights
　　☞92k90 Freedom of Speech and of the Press
　　　☞92k90.4 Obscenity and Pornography
　　　　☞92k90.4(3) k. Entertainment in General; Telecommunications. Most Cited Cases

☞376 Theaters and Shows
　☞376k3.50 k. Dancing. Most Cited Cases

Determination, that ordinance provisions restricting nude dancing in premises of sexually oriented business violated First Amendment, mandated declaration that provisions barring licensees and managers from allowing persons to perform in violation of those regulations were likewise invalid. U.S.C.A. Const.Amend. 1.

[33] KeyCite Notes

☞268 Municipal Corporations
　☞268IV Proceedings of Council or Other Governing Body
　　☞268IV(B) Ordinances and By-Laws in General
　　　☞268k111 Validity in General
　　　　☞268k111(4) k. Effect of Partial Invalidity. Most Cited Cases

Unconstitutional provisions of municipal ordinance, requiring licensing of sexually oriented businesses and regulating nude dancing, were not so inextricably intertwined with valid provisions as to preclude severance.
*476 David Brickman, Albany, NY, for Thomas G. Brownell, Barrell of Dolls Saloon, Inc.
Linda S. Kingsley, Rochester, NY, Jeffrey P. Eichner, Rochester, NY, for City of Rochester.

*DECISION AND ORDER*

LARIMER, Chief Judge.
This litigation once again compels a federal court to deal with an activity--nude barroom dancing--that is repugnant to a large segment of the community. No doubt in response to that sentiment, the City of Rochester, like other municipalities, has enacted an ordinance ("the Ordinance") which restricts the type of conduct at establishments providing such entertainment. The Ordinance also imposes exhaustive licensing requirements for those who would operate and perform in such emporia.
The unpopularity of such activity, however, has never been the litmus test for *477 determining whether that activity should be banned. The First Amendment of the United States Constitution was adopted to guarantee that the government could not abridge the expression and presentation of unpopular ideas. "If there is a bedrock principle underlying the First Amendment, it is that the

government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

A newcomer to the dispute over barroom nude dancing might well express skepticism that such activity is covered by the First Amendment at all. Although debates about the morality or social acceptability of nude dancing and other "adult" entertainment will likely continue for many years to come, as a matter of constitutional law the matter largely has been put to rest. The United States Supreme Court has established that such activity, provided that it is not obscene, constitutes expressive conduct that is entitled to protection under the First Amendment. The expressive conduct is an erotic one which, by its nature, may be troubling to a segment of the populace. No matter how tasteless such performances may appear to many, until the United States Supreme Court changes its view, such dancing is entitled to protection under the First Amendment. If the principles set forth in the First Amendment are to survive, then it is precisely those ideas and beliefs which claim the fewest adherents, and which large segments of society find the most offensive, that are in the greatest need of the bulwark of the First Amendment.

Although the dance may be tasteless and indecent to many, like other "unpopular" speech (whether written, spoken or performed) it is entitled to its place, albeit a modest one, in the marketplace of ideas. The Court's task is not to determine the morality, tastefulness or artistic merits of the conduct at issue. The issue before me is simply whether the City's regulation of conduct that all sides agree is constitutionally protected runs afoul of the First Amendment.

After careful review, I find that portions of the Ordinance violate the First Amendment and must be struck down as unconstitutional. Therefore, plaintiffs' motion for an injunction enjoining the City from enforcing the Ordinance is granted in part.

## FACTUAL BACKGROUND

These three actions have been brought by three adult entertainment businesses in the City of Rochester, New York ("the City"), and their owners, challenging the Ordinance adopted by the City on September 22, 2000. The Ordinance, most of which took effect on January 31, 2001, [FN1] amends the City's Municipal Code by, inter alia, adding a new chapter ("Chapter 98") that provides for the licensing and regulation of sexually oriented businesses within Rochester. Plaintiffs, who are all represented by the same attorney and whose complaints are virtually identical, [FN2] have sued the City under 42 U.S.C. §§ 1983, 1985 and 1988, alleging that the Ordinance violates their rights under the *478 First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. Simultaneously with the commencement of the actions, plaintiffs also moved for a preliminary injunction enjoining defendant from enforcing Chapter 98.

> FN1. One section dealing with "Body Rub Parlors" (which is not at issue in these actions), took effect on January 1, 2001. In addition, counsel for the City stated at oral argument that until the court decides the pending motions for a preliminary injunction, the City has agreed not to enforce the licensing-related sections of the Ordinance, which are being challenged here.

> FN2. By Decision and Order entered on January 30, 2001, the court consolidated all three cases for purposes of deciding the pending motions for a preliminary injunction.

The Ordinance (Appendix A to this Decision and Order) states that its purpose is to regulate sexually oriented businesses in the City in order to address certain undesirable "secondary effects" associated with such businesses. Those secondary effects generally include crime (such as prostitution), health concerns (such as the transmission of sexually transmitted diseases), and the downgrading of property values in areas near sexually oriented businesses.

Section 98-3 of the Ordinance sets forth four types of sexually oriented businesses for which licenses are required, the most pertinent to these actions being "adult cabaret," which is defined as "a business enterprise which regularly features or offers to the public, customers or members, performances by persons who appear nude or semi-nude or live performances that are characterized

by their emphasis on the exposure, depiction or description of specified anatomical areas [FN3] or the conduct or simulation of specified sexual activities." [FN4] The Ordinance makes it unlawful for anyone to operate a sexually oriented business, or to work or perform, or to allow any employee to work or perform, nude or semi-nude at a sexually oriented business, without a valid license. Ordinance § 98-4(A).

> FN3. "Specified anatomical areas" is defined as "any showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a full opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state."

> FN4. "Specified sexual activities" is defined as actual or simulated acts of masturbation, sexual intercourse, oral or anal copulation or sadomasochism; fondling or other erotic touching of or physical contact with one's own or another's genitals, pubic area, buttocks or female breasts, whether clothed or unclothed; human male or female genitals when
>
> in a state of sexual stimulation or arousal; or excretory functions or acts with animals as part of or in conjunction with any of the activities set forth herein. Activities which are commonly referred to by the slang terms "lap dance," "straddle dance," "face dance" or "table dance" shall be included in this definition. For purposes of this definition, "sadomasochism" means infliction of pain, flagellation or torture, or the condition of being bound, fettered or otherwise physically restrained.

The Ordinance sets forth a number of requirements for issuance of a sexually oriented business license, as well as various items of information that must be supplied by the applicant, including the applicant's name and address, whether the applicant has been convicted of certain crimes, partnership or corporate information, if applicable, etc.

The Ordinance makes the Chief of Police ("the Chief") the issuing authority for sexually oriented business licenses. Upon the filing of an application for a sexually oriented business license, an investigation is to be performed within thirty days by certain City agencies to determine compliance with the Ordinance and applicable zoning, fire, and property codes. Upon conclusion of the investigation, the Chief must issue the license unless one or more disabling conditions (e.g., conviction of one of the specified crimes) are found to exist.

The Ordinance states that "[d]eterminations resulting from a person's background, or activities at a sexually oriented business, with respect to the denial, suspension, or revocation of a license, which incidentally burden free expression, shall *479 be no broader than needed to achieve City goals." Ordinance § 98-17. The Ordinance further provides that upon denial, suspension or revocation, "the applicant or licensee may seek prompt judicial review of such administrative action pursuant to Article 78 of the [New York] Civil Practice Law and Rules." The denial, suspension or revocation "shall be stayed for a period of twenty (20) days and, if a proceeding is brought to challenge the administrative action, throughout the pendency of the proceeding in the trial court. The administrative action shall be promptly reviewed by the court." Ordinance § 98-19.

The Ordinance then goes on to set forth additional regulations relating to activities on the premises of sexually oriented businesses, which affect customers and performers alike. These include a proscription of certain "specified sexual activities," a requirement that performers be on a stage at least eighteen inches above the floor and at least six feet from the nearest customer, a prohibition of physical contact between performers and customers, etc. Ordinance § 98-21.

Section 98-28 provides that the "Municipal Code Violations Bureau shall hear and determine charges involving violations of this chapter. Any person who violates this chapter shall be subject to the penalties set forth in Section 13A-11G of the Municipal Code." The latter section provides for fines ranging from $100 for a first offense to $300 for third and subsequent offenses, with additional

penalties of double those amounts upon default.

As stated, plaintiffs in the instant cases are all sexually oriented businesses and their owners. In addition, two of the individual plaintiffs, Thomas G. Brownell and Dennis S. Giunta, are alleged to be managers of their sexually oriented businesses. The sexually oriented businesses in these actions fall within the Ordinance's definition of "adult cabarets," *i.e.*, they all feature live nude or semi-nude entertainers.

Plaintiffs contend that the Ordinance constitutes an impermissible prior restraint on the exercise of their rights under the First Amendment. In particular, plaintiffs challenge several aspects of the licensing system: the requirement that information on the license application be given under oath; the Chief's discretion to determine if any information on the application is false; and the nature of the information required to be provided, much of which plaintiffs contend is sensitive in nature and irrelevant to any legitimate interests of the City. Plaintiffs further argue that requiring applicants to provide information about such matters as their criminal records will have a chilling effect on persons who would like to obtain a sexually oriented business license. In addition, plaintiffs contend that many of the restrictions on performers' actions while on stage impermissibly restrict their freedom of expression under the First Amendment.

## DISCUSSION

### I. Standing

[1] The first issue that must be addressed is one of standing. The City contends that plaintiffs lack standing, especially relating to the licensing process. The City points out that plaintiffs have not yet submitted license applications pursuant to the Ordinance, or been denied a license, nor do they contend that they would be subject to denial under the Ordinance. In addition, the court was concerned about whether these plaintiffs could assert First Amendment claims on behalf of the performers who work at the plaintiff businesses, none of whom is a party to any of these actions. The court raised this issue *sua sponte,* since "[t]he federal courts are under an independent obligation to examine *480 their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citations omitted)).

I conclude that plaintiffs have demonstrated the requisite standing to challenge the Ordinance. First, as to the licensing aspects, the Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." (City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 755-56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)). See, e.g., Genusa v. City of Peoria, 619 F.2d 1203, 1218 (7th Cir.1980) (plaintiff owners had standing to challenge disabling provision based on prior criminal convictions, "even absent allegations that licenses would be denied to any plaintiff owner because of the provisions," since provision "would make it more difficult for the owners to sell their interests in their adult bookstores, would present a continuing threat of loss of license in the event of future conviction of one of the specified offenses, and would subject the owners to ... investigative and information disclosure requirements"); Baby Dolls Topless Saloons, Inc. v. City of Dallas, 114 F.Supp.2d 531, 542 (N.D.Tex.2000); Jersey's All-American Sports Bar, Inc. v. Washington State Liquor Control Bd., 55 F.Supp.2d 1131, 1136 (W.D.Wash.1999) ("There is no dispute that the plaintiff's activities render it subject to the permitting scheme at issue.... Thus, the Court finds that the plaintiff has standing to bring this facial challenge and proceeds to consider the merits of its claims"); Ohio Citizen Action v. City of Avon Lake, 986 F.Supp. 454, 459 (N.D.Ohio.1997); Natco Theatres, Inc. v. Ratner, 463 F.Supp. 1124, 1126-27 (S.D.N.Y.1979).

[2] Moreover, plaintiffs' claims are based not just on the possibility that they may be denied licenses, but on the information required by the application itself. Plaintiffs allege that the required information is not reasonably related to any legitimate governmental interest, and that they should not be required to provide that information in the first place. See Buckley v. Valeo, 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ("compelled disclosure, in itself, can seriously infringe on the privacy of association and belief guaranteed by the First Amendment"). For example, the Ordinance provides for denial of a license if the applicant is found to have been convicted of any of a number of specified offenses. Plaintiffs do not allege that they have been convicted of any of those offenses. If

they were only challenging the disabling provision itself, they might lack standing to bring their claim. See FW/PBS, 493 U.S. at 234, 110 S.Ct. 596 (to establish standing to challenge provision disabling an applicant who has been convicted of any of certain enumerated crimes within a certain period of time, plaintiff must show both (1) conviction of one or more of the enumerated crimes, and (2) that the conviction or release from confinement occurred recently enough to disable the applicant under the ordinance).

As stated, however, plaintiffs also assert that it is a violation of their rights simply to be required to disclose much of this information. They contend that much of the information required on the application form is not relevant to any legitimate interests that the City may have with respect to regulating sexually oriented businesses, and that required disclosure of this *481 information is intrusive, unnecessary and would tend to have a chilling effect on the exercise of First Amendment rights by persons who wish to obtain a license to operate or perform in a regulated establishment. The merits of this claim are also intertwined to a great extent with the underlying issue of whether the disabling requirements are themselves valid. Although the range and types of information required do not correspond in every particular with the disabling factors, many of them do correspond; for example, the Ordinance requires that the applicant state whether he has ever been convicted of one or more specified crimes, and it also makes conviction of any of those crimes grounds for denial of a license. Ordinance §§ 98-5(D)(3), 98-10(A)(3). If, as a constitutional matter, the City cannot deny a license based solely on such a conviction, then requiring such information would be unlikely to serve any legitimate purpose, and could constitute a violation of the applicant's privacy.

I therefore conclude that plaintiffs do have standing to challenge the disclosure requirements, even if they lack standing to challenge the disabling provisions directly. See Genusa, 619 F.2d at 1216 (corporation and corporate officer had standing to challenge disclosure requirements that applied to officers, directors, and stockholders of a corporate applicant). Because the two issues are so closely related, however, evaluation of plaintiffs' challenge to the disclosure requirements will necessitate consideration of the validity of the disabling provisions as well. See Ellwest Stereo Theater, Inc. v. Boner, 718 F.Supp. 1553, 1568 (M.D.Tenn.1989) (striking down, without discussing issue of standing, criminal disclosure requirement on ground that disabling provision based on prior felony conviction was unconstitutional).

[3] I also determine that plaintiffs have standing to assert First Amendment claims with respect to enforcement of the Ordinance's restrictions on activities inside sexually oriented businesses. Although plaintiffs are owners and not the performing artists, they nonetheless have sufficient interest to challenge the Ordinance. See, e.g., Leverett v. City of Pinellas Park, 775 F.2d 1536, 1539 (11th Cir.1985) (in suit by corporation and its owners challenging city ordinances prohibiting nudity in commercial establishments under certain circumstances, plaintiffs' "direct, authentic and continuing interest" in offering nude dancing at plaintiffs' nightclub led court to find that plaintiffs had standing to sue); Howard v. City of Jacksonville, 109 F.Supp.2d 1360, 1362 (M.D.Fla.2000) ("The nude dancing and adult media offered by Plaintiff [at its lounge] are claimed to be non-obscene, constitutionally-protected communication. Accordingly, [plaintiff] ha[s] standing to make this constitutional challenge" to ordinance imposing moratorium on issuance of adult entertainment licenses); J.L. Spoons, Inc. v. City of Brunswick, 49 F.Supp.2d 1032, 1042 (N.D.Ohio 1999) ("J.L. Spoons has persuasively argued that the prohibitions in [a section of an ordinance regarding the conduct of employees and patrons in sexually oriented businesses] directly impinge its own First Amendment rights, as it sponsors the very performances that the section is designed to regulate"); Santa Fe Springs Realty Corp. v. City of Westminster, 906 F.Supp. 1341, 1352-53 (C.D.Cal.1995) (corporate plaintiff, which operated topless bar, had standing to challenge conditional use permit ordinance, in part because plaintiff would be prohibited from engaging in protected First Amendment activity if its adult cabaret were closed). In addition, *482 while persons to whom a statute may be constitutionally applied normally lack standing to argue that a statute is unconstitutional if applied to persons or situations not before the court, see Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), an exception to that rule applies when the plaintiff can show that "(1) it faces a threat of actual injury such that it has a sufficiently concrete interest in the controversy; (2) it has a close relationship with the third party; and (3) there is some hindrance to the third party's ability to protect his or her own interests." J.L. Spoons, 49 F.Supp.2d at 1042 (citing Powers v. Ohio, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)).

Plaintiffs have made such a showing in the cases at bar. Although they are not performers, plaintiffs have some First Amendment rights of their own that are implicated here, inasmuch as they present the performances that the Ordinance is designed to regulate. *Id.* As for the performers themselves, their First Amendment interests in these cases is "virtually identical" to that of plaintiffs, *id. at 1043;* see also *Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1252 (5th Cir.1995) (holding that plaintiff corporation that operated topless bar had standing to challenge "no touch" provision as violative of First Amendment rights of its employees and customers, in part because "there [wa]s no indication that Hang On's interest in this litigation diverge[d] from that of its dancers"), and they, like plaintiffs, also have a financial stake in the outcome of these actions, since one of the provisions of the Ordinance prohibits performers from soliciting tips during their performances. *See Hang On,* 65 F.3d at 1252 ("Significantly, Arlington cannot dispute that its ordinance has a direct financial impact on Hang On, as well as Hang On's employees. Injury is essential to meeting the threshold case or controversy requirement of Article III, and injury of this type is usually a component of a relationship sufficiently 'close' to meet prudential standing requirements"). I conclude, therefore, that plaintiffs do have standing to bring these actions.

## II. Preliminary Injunctions-General Standards

[4] "A party seeking a preliminary injunction must demonstrate '(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.' " *N.A.A.C.P., Inc. v. Town of East Haven,* 70 F.3d 219, 223 (2nd Cir.1995) (quoting *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991)). The " 'serious questions' prong is also frequently termed the 'fair ground for litigation' standard." *East Haven,* 70 F.3d at 223.

The Second Circuit has stated that " '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' " *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.,* 719 F.2d 42, 45 (2d Cir.1983) (quoting 11A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2948 at 431 (1973) (footnote omitted)). *Accord Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990). Whether a particular harm is irreparable turns on its imminence and the lack of an adequate remedy at law. *See Reuters,* 903 F.2d at 907 (citations omitted) ("Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must *483 be one incapable of being fully remedied by monetary damages"). Finally, "[i]n making the determination of irreparable harm, both harm to the parties and to the public may be considered." *Long Island R.R. Co. v. International Ass'n of Machinists,* 874 F.2d 901, 910 (2d Cir.1989), *cert. denied,* 493 U.S. 1042, 110 S.Ct. 836, 107 L.Ed.2d 831 (1990).

[5] As for the second prong of the standard for issuance of injunctive relief, where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard, and should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Charette v. Town of Oyster Bay,* 159 F.3d 749, 754 (2d Cir.1998); *Plaza Health Labs., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989).

Although a court deciding a motion for a preliminary injunction must conduct a hearing if any essential facts are in dispute, *Consolidated Gold Fields PLC v. Minorco, S.A.,* 871 F.2d 252, 256 (2d Cir.), *cert. dismissed,* 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989); *Fengler v. Numismatic Americana, Inc.,* 832 F.2d 745, 747 (2d Cir.1987), no hearing is necessary if the facts are undisputed or if a hearing would not yield additional pertinent information. *Charette,* 159 F.3d at 755; *United States v. Ianniello,* 824 F.2d 203, 207 (2d Cir.1987); *Herbert Rosenthal Jewelry Corp. v. Grossbardt,* 428 F.2d 551, 554-55 (2d Cir.1970) ("not every application for a preliminary injunction require[s] an evidentiary hearing"). Rather, " 'there is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it.' " *Consolidated Gold Fields PLC,* 871 F.2d at 256 (citation omitted).

In addition, "[w]here a party against whom an injunction is sought is 'demonstrably "content to rest"