

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CENTERFOLDS, INC. AND MARIO PIROZZOLI, JR. | : <br> : NO.: 3:02CV2006 (WWE) |
| v. | : |
| TOWN OF BERLIN, BONNIE L. THERRIEN, IDA RAGAZZI, JOANNE WARD, JOSEPH ARESIMOWICZ AND LINDA CIMADON | : <br> : <br> : <br> : MAY 16, 2004 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**1. Procedural Due Process**

On pages 6-8 of plaintiffs' brief, they argue that the procedural due process claim is not moot, because it is capable of repetition but may evade review. Defendants' motion does not argue mootness, but rather argues that the plaintiff's procedural due process claim fails as a matter of law because plaintiff's property interest in the license was not taken. For the same reason the plaintiffs lack standing to pursue the procedural due process claim because there was no "injury in fact."

Plaintiff does not dispute that Centerfolds remained open after Ms. Therrien issued the "revocation" pending review of her decision by the Town Council, under the ordinance. See 56a2 Statement, ¶ 19. Therefore, the Court may enter judgment in defendants' favor on this claim. The plaintiffs' theory to support the procedural due process claim (which has not been pled) now rests

on plaintiff's interpretation of the ordinance in three completely hypothetical scenarios. Plaintiffs hypothesize that it could be closed pending an appeal of a Town Manager's decision not to renew, or a decision to revoke or suspend. However, plaintiff also admits that there is no current violation by stating, "[i]t is reasonable to expect that the Town of Berlin will successfully drive the plaintiffs out of business before the plaintiffs have an opportunity to exercise their due process rights." See, p. 8. This new theory fails because it is not pled and plaintiff lacks any standing to bring this challenge, which is admittedly hypothetical. There is no injury in fact. In addition, plaintiff's claim is not ripe for review. Oriental Health Spa v. City of Fort Wayne, 864 F. 2d 486 (7th Cir. 1988). In that case, the Seventh Circuit held that the Spa's challenge to the suspension and revocations procedures contained in the ordinance was not ripe, because plaintiff had not been threatened with revocation or suspension. Neither has Centerfolds' license been revoked or suspended. The plaintiff's argument is purely abstract. As stated by the Seventh Circuit, "Thus, this Court cannot entertain a claim which is based upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all." Id at ___, citing Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568, 580-1 (1985).

Moreover, a plaintiff does not state a claim under the procedural due process claim until the violation occurs, which is not until the state fails to provide a sufficient post-deprivation remedy. See e.g., McKinney v. Pate, 20 F. 3d 1550 (11th Cir. 1994)(en banc), citing Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct.

2

3194, 3204 (1984)("An unauthorized intentional derivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-derivation remedy for the loss is available.")   Finally, plaintiff has clearly failed to establish how the procedures under the ordinance violate procedural due process.  Centerfolds has failed to show what additional procedures it would be due.  See Harhay v. Town of Ellington BOE, 323 F.3d 206, 213 (2d. Cir. 2003)("given [plaintiff's] failure to articulate any way in which the Board's established procedures failed to provide her with adequate procedural protection, Harhay's constitutional claim fails.")

For these additional reasons, defendants are entitled to summary judgment on plaintiff's procedural due process claim.

## 2. First Amendment Claims

### A. Standing

Plaintiff claims it has standing to challenge portions of the statute that do not apply to it and have not been applied against it, citing the US Supreme Court case of City of Lakewood.  See p. 10-12.  Defendants' do not dispute that an adult business may make a facial challenge in certain circumstances.  What is disputed is that the exception to the rule disfavoring facial challenges applies in this case.  Plaintiff cites City of Lakewood, decided in 1988, to support a global statement of its ability to bring a facial challenge to the licensing portion of the ordinance.  See pgs. 11-13.  However, plaintiff overlooked the subsequent U.S.

Supreme Court case of FW/ PBS, Inc. v. Dallas, 493 U.S. 215 (1990), which held that the plaintiff could not bring a facial challenge to the licensing portions of the statute that were not applied to it. The Court stated the issues before it as follows:

> These cases call upon us to decide whether a licensing scheme in a comprehensive city ordinance regulating sexually oriented businesses is a prior restraint that fails to provide adequate procedural safeguards as required by Freedman v. Maryland, 380 U.S. 51 (1965). We must also decide whether any petitioner has standing to address the ordinance's civil disability provisions, whether the city has sufficiently justified its requirement that motels renting rooms for fewer than 10 hours be covered by the ordinance, and whether the ordinance impermissibly infringes on the right to freedom of association.

The ordinance in that case contained a provision that persons convicted of a crime could not obtain a license for a period of time. Id. at 222. As to standing, the Court explained that a facial challenge is appropriate only where the licensing scheme vests unbridled discretion in the decision maker and where the regulation is overbroad. Id. at 223. Plaintiff tries to argue that the Town Manager has unbridled discretion because she must determine whether a license holder has received more than two "material" violations in certain in reviewing renewals, suspensions and revocations. However, this section is not in any way similar to the cases involving impermissible prior restraints on speech where the licensing authority has "unbridled discretion." Those cases involve provisions where the licensing authority had to determine whether issuing the license was in the public interest. Lakewood, supra; Shuttlesworth v. City of Birmingham, 394 U.S. 147 (1969)(authority had to determine whether in public's health, safety and welfare);

4

Deboer v. Village of Oak Park, 267 F.3d 558, 573 (7th Cir. 2001)(whether issuing license "benefits public as a whole."). This section of the ordinance is more akin to the "civil disability" provision in FW/PBS which the Court held that the plaintiff in that case did not have standing to challenge. Id. at 233-236. The ordinance in FW/ PBS provided that applicants who had been convicted of certain crimes could not obtain a license, just as the Berlin ordinance "disables" a license holder from obtaining a renewal if there are several material violations of the ordinance.

Simply because the term "material" is not defined in the ordinance does not mean that it is subject to unlimited interpretation by the Town Manager in some pretextual effort to shut down plaintiff's business, as plaintiff seems to fear. It is a familiar term, defined in Black's Law Dictionary as:

> important; more or less necessary; having influence or effect; going to the merits; having to do with matter, as distinguished from form. Representation relating to matter which is so substantial and important as to influence party to whom made is 'material.'

This Court must determine, on this motion, whether there are any "material" facts in dispute. Certainly there would be no suggestion that a Court's role in determining which material facts are in dispute subjects the parties to some arbitrary decision making. To the contrary, the word "material" limits the circumstances where a license may be non-renewed or suspended, rather than providing unbridled discretion. Just because there is some interpretation involved does not render the ordinance an unconstitutional licensing scheme. The U.S. Supreme Court, in Thomas v. Chicago Park Dist., 534 U.S. 316, 324 (2002) held a licensing scheme was not a prior restraint where the license could

be denied under certain circumstances. The ordinance included a provision for the licensor to deny a license if the applicant represented a "material falsehood." Id. In addition, courts have held that provisions which preclude licenses to repeat violators (for any violation) of an ordinance is valid. See, e.g., Tee & Bee, Inc. v. City of West Allis, 936 F. Supp. 47 (E.D. Wis. 1996); T.K.'s Video v. Denton County, Texas, 24 F.3d 705, 710 (5th Cir. 1994). For these reasons, the Berlin ordinance does not impermissibly vest the Town Manager with unbridled discretion and authority.

B. <u>Standard of Review</u>

Plaintiff also argues that strict scrutiny should apply, seemingly because the ordinance is not a total ban on nudity. Plaintiff overlooks the more recent case of <u>City of Los Angeles v. Alameda Books</u>, 535 U.S. 425 (2002) and subsequent Circuit Court decisions, which confirm that where a community is concerned with the "secondary effects" of adult entertainment, the standards under <u>O'Brien</u> still apply even though the ordinances may regulate the activities of sexually oriented businesses. Under <u>Alameda Books</u>, an ordinance is reviewed under intermediate scrutiny if it is concerned with secondary effects. Id., see also <u>G.M. Enter v. Town of St. Joseph</u>, 350 F.3d 631 (7th Cir. 2003)(applies intermediate scrutiny to ordinance prohibiting nude dancing at sexually oriented businesses); <u>N.W. Enterprises Inc., v. City of Houston</u>, 352 F.3d 162 (5th Cir. 2003)(applying intermediate scrutiny); <u>Heideman v. South Salt Lake City</u>, 348 F.3d 1182 (10th Cir. 2003)(same); <u>Center for Public Policy v.</u>

6

<u>Maricopa Cty.</u>, 336 F.3d 1153 (9th Cir. 2003)(same); <u>Fly Fish, Inc. v. City of Cocoa Beach</u>, 337 F.3d 1301 (11th Cir. 2003)("Erie extends the secondary effects rationale of Renton beyond its zoning context to the regulation of expressive conduct. Under Renton, an ordinance may target adult entertainment establishments, and the nude dancing that occurs there, if it is aimed at reducing the negative secondary effects associated with these establishments.").

Plaintiff, however, cites no case where a Court applied strict scrutiny to an ordinance concerned with secondary effects. Even the case principally relied upon throughout plaintiff's opposition, <u>Barrell of Dolls Saloon</u>, also applied <u>O'Brien</u> intermediate scrutiny.

However, the application of the intermediate scrutiny standard in <u>Barrell of Dolls Saloon</u>, concerning whether the City adequately justified its ordinance is questionable because it predates <u>Alameda Books</u>. As a result, it gave insufficient deference to the City of Rochester to craft an ordinance to curb the secondary effects, as required by the plurality in <u>Alameda Books.</u>

Finally, plaintiff has failed to meet its burden under <u>Alameda Books</u>. Under <u>Alameda Books</u>, the burden shifts to Fair Public Policy to "cast direct doubt on [city's] rationale, either by demonstrating that the [city's] evidence does not support its rationale or by furnishing evidence that disputes the [city's] factual findings." <u>Center for Fair Public Policy</u> at 1168, citing <u>Alameda Books</u>, 535 U.S. at 441 (plurality opinion). Therefore, defendants are entitled to summary judgment on the First Amendment claim.

C. <u>Vagueness</u>

Plaintiff raises two vagueness challenges. Plaintiff claims the ordinances covers "innocent" contact between performers and patrons. See p. 19. However, plaintiff then clarifies its claim and argues that the ordinance is vague because a "hug between friends" would be a violation. Plaintiffs' argument takes the ordinance to absurd proportions. The ordinance clearly is meant to prohibit physical contact between strangers—the dancers and the patrons, when viewed in the light of the secondary effects the ordinance seeks to address. Defendants also disagree that "hugs between friends" are the type of "expressive conduct" that the Supreme Court has considered worthy of protection. Physical contact between dancers and patrons is simply not protected. <u>Hang On, Inc. v. City of Arlington</u>, 65 F.3d 1248, 1253 (5th Cir. 1995). Plaintiff cites no case in support of its position that hugs are protected speech.

As to plaintiff's concern regarding penalties for violation of the ordinance, that portion of the ordinance has been stricken and is void. See **Exhibit A**, attached to this Reply, <u>Marvin A. St. Pierre v. Berlin</u>, Memorandum of Decision. Pg. 7-10. Plaintiff suggests it does not know whether nude dancing is permitted. When the ordinance is read as a whole, it is under certain circumstances. As shown from the transcript from the revocation hearing on page 10, Ms. Therrien's enforcement action was taken as a result of the plaintiff violating Section 12(b)(8) which prohibits knowingly allowing any live performance featuring specified sexual activities defined in 2 (gg) and also in section 1(b)(6). Under cross-

examination by plaintiff's counsel, she explained that the violation was because of the sexual physical contact between the employees and patrons.

For all these reasons and those in Defendants' memorandum of law, judgment should enter in their favor.

> DEFENDANTS,
> TOWN OF BERLIN, BONNIE L.
> THERRIEN, IDA RAGAZZI, JOANNE
> WARD, JOSEPH ARESIMOWICZ
> AND LINDA CIMADON
>
> By *(signature)*
> Melinda A. Powell
> ct17049
> Howd & Ludorf
> 65 Wethersfield Avenue
> Hartford, CT 06114
> (860) 249-1361
> (860) 522-9549
> mpowell@hl-law.com

### CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 17th day of May 2004.

Norman A. Pattis, Esquire
51 Elm Street, Suite 409
New Haven, CT 06510

*(signature)*
Melinda A. Powell

9

| | |
|---|---|
| D.N. CV 03 0523835 S | : SUPERIOR COURT |
| MARVIN A. ST. PIERRE, | : J.D. of NEW BRITAIN AT |
| | : NEW BRITAIN |
| V. | : |
| TOWN OF BERLIN, ET AL | : March 18, 2004 |

## MEMORANDUM OF DECISION

The plaintiff Marvin St. Pierre has a financial interest in a business known as "Berlin Station Café" located at 845 Farmington Avenue, Kensington, within the geographical limits of the Town of Berlin. The defendant Town of Berlin is a municipal corporation of the State of Connecticut. The defendant Richard Haberman is the Town Manager of the Town of Berlin and has been sued in his official capacity only.

In a complaint dated October 14, 2003, the plaintiff alleges that the Town of Berlin adopted an ordinance concerning sexually oriented businesses.

Section 14, Article IV of the Code of Ordinances of the Town of Berlin is entitled "Sexually Oriented Business." This ordinance sets forth a regulatory scheme for the licensing and regulation of businesses dealing in materials or entertainment that are considered to be sexually oriented as such term is defined in the ordinance. The ordinance provides in pertinent part that:

Sexually oriented business means:

Judicial District of New Britain
SUPERIOR COURT
FILED

MAR 18 2004

ANDREW S. HOLDEN
ASSISTANT CLERK

(1) An adult arcade, adult bookstore, adult video store, adult cabaret, adult minimotion picture theater, adult motion picture theatre, adult novelty shop, adult theatre, escort agency, massage parlor, nude model studio or sexual encounter establishment;

(2) Any premises to which the public, patrons, or members are invited or admitted and wherein an entertainer provides adult entertainment, or which premises are so physically arranged as to provide booths, cubicles, studios, rooms, compartments or stalls separate from the common areas of the premises for the purpose of viewing adult-oriented motion pictures or wherein an entertainer provides adult entertainment is held, conducted, operated or maintained for profit, direct or indirect; or

(3) Any adult entertainment studio or any premises that are physically arranged and used as such, whether advertised or represented as an adult entertainment studio, rap studio, exotic dance studio, encounter studio, sensitivity studio, modeling studio or any other term of like import.

The plaintiff alleges that the subject ordinance "may or may not effectually prohibit the operation of any such business within the town of Berlin, and which ordinance, in any event, operates as a chilling factor on the exercise of rights of expression protected under the Constitutions of the United States and the State of Connecticut."

The plaintiff further alleges that representatives of the town's administration have visited the plaintiff and have advised him that if he should allow "naked karaoke" at the Berlin Station Café, as contemplated by the plaintiff, the plaintiff or his agents and employees of the Berlin Station Café would be subject to arrest and prosecution for violating the aforementioned ordinance.

2

The plaintiff has use language, at least in that part appears to seek to invalidate the subject legislation on the grounds that it is unconstitutional.[1]

> It is well settled that, "[i]n the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a[n] [ordinance] on its face.... A judicial holding that a legislative [a]ct is unconstitutional is one of very grave concern. We ought not, and will not, declare a[n] [ordinance] to be unconstitutional unless our judgment is formed in the light of this rule of our law: It is our duty to approach the question with caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the [a]ct unless its invalidity is, in our judgment, beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *Sweetman v. State Elections Enforcement Commission*, 249 Conn. 296, 320, 732 A.2d 144 (1999); accord *Hall v. Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 306-307, 695 A.2d 1051 (1997). Furthermore, "outside the context of the first amendment, in order to challenge successfully the facial validity of a[n] [ordinance], [the challenging] party [must] demonstrate as a threshold matter that the [ordinance] may not be applied constitutionally to the facts of his case." *Packer v. Board of Education*, 246 Conn. 89, 106, 717 A.2d 117 (1998).

*State v. Reynolds*, 264 Conn. 1, 65 (2003).

> "[A] party who challenges the constitutionality of a statute bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality.... In addition to showing that [the statute] is unconstitutional beyond a reasonable doubt, [the plaintiff] must show that its effect or impact on [her] adversely affects a constitutionally protected right which [she] has.... Finally, [w]hile the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case." (Citations omitted; internal quotation marks omitted.) *Federal Deposit Ins. Corp. v. Voll*, 38 Conn. App. 198, 203, 660 A.2d 358,

---

[1] However see footnote 2.

3

cert. denied, 235 Conn. 903, 665 A.2d 901 (1995); see *Connecticut National Bank v. Giacomi*, 242 Conn. 17, 44, 699 A.2d 101 (1997). . .

*Wendt v. Wendt*, 59 Conn. App. 656, 681 (2000).

The Court further notes that although plaintiff has used language concerning a constitutional violation, the actual issues upon which the plaintiff seeks redress are narrow and concern only the ordinance's penalty section.

The plaintiff specifically alleges that the ordinance is:

> . . .void for vagueness because (if for no other reason) the penalty section is unclear and uncertain in its meaning; or because it appears to make violation of the ordinance subject to sanctions more severe than the penalties allowed by Section 7-148(c)(10)(A) of the Connecticut General Statutes for violation of municipal ordinances of the kind herein involved.

The issues raised by the plaintiff are capable of resolution without the necessity of passing upon the ordinance's constitutionality.[2]

Section 1-15 of the Berlin Municipal Code concerns the general penalty provisions for violating the code. This section provides that:

---

[2] The Court notes that the plaintiff states on page 5 of the Memorandum in Response to Defense Brief of January 20, 2004 that:

> Plaintiff is not asking the Court to sustain his position on constitutional basis, but because the town's enactment exceeds its authority under the Connecticut General Statutes, especially 7-148910 (sic) The argument sounds in ultra vires, not in unconstitutionality. . .

In light of plaintiffs limiting the issues as stated, this Court will not consider any other possible constitutional infirmities of the subject legislation.

4

> Unless otherwise specifically provided, the violation of any chapter, rule or regulation or any specific provision or provisions thereof adopted by the town council as a part of this Code shall be deemed on offense against such chapter, rule regulation or provision thereof punishable be a fine not to exceed $100.00.
>
> **State law reference**-Penalty for violation of town legislation, G.S. § 7-148(c)(10)(A) (sic).[3]

Section 14-243 of the Berlin Municipal Code concerns the penalty provision for violations of the town's ordinances concerning sexually oriented businesses. This section provides that:

> (a) Any licensee, operator, employee or other person who violates any of the provisions of this article, shall upon conviction, be subject to a fine as provided in section 1-15 for each such violation, and shall further be subject to arrest on a misdemeanor charge.

---

[3] Section 7-148 C.G.S. concerns municipal enabling legislation. Subsection 7-148(c) of the Connecticut General Statutes concerns municipal powers and provides that:

> Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the Constitution and general statutes...

Sec. 7-148. Scope of municipal powers.

Subsection 7-148(c)(10)(A) provides that municipalities shall have to power to:

> Make all lawful regulations and ordinances in furtherance of any general powers as enumerated in this section, and prescribe penalties for the violation of the same not to exceed one hundred dollars, unless otherwise specifically provided by the general statutes. Such regulations and ordinances may be enforced by citations issued by designated municipal officers or employees, provided the regulations and ordinances have been designated specifically by the municipality for enforcement by citation in the same manner in which they were adopted and the designated municipal officers or employees issue a written warning providing notice of the specific violation before issuing the citation

5

(b) Each violation of this article shall be considered a separate offense, and any such violation continuing more than one hour of time shall be considered a separate offense for each hour or violation.

(c) In addition to any fines or penalties imposed in this section, this article may be enforced by injunctive procedure in the superior court. The town may further recover from any violator any and all costs and fees, including reasonable attorney's fees, expended by the town in enforcing the provisions of this article.

(d) This article shall not preclude any additional enforcement action taken by any appropriate town, state or federal official conducted pursuant to any applicable ordinance, regulation or law of the town or state or the United States of America.

(e) All remedies and penalties provided for in this section shall be cumulative and independently available to the town, and the town shall be authorized to pursue any and all remedies set forth in this section to the fullest extent of the law.

The issue that brings this matter before the Court is the portion of §14-243(a) that provides that an individual accused of violating the ordinance "shall be subject to arrest on a misdemeanor charge."

Section 7-148(c) of the Connecticut General Statutes concerns the scope of municipal powers. Subsection 7-148(c)(10)(A) concerns the miscellaneous powers that are granted to municipalities. This statute provides in pertinent part that Connecticut municipalities shall have the power to:

(A) Make all lawful regulations and ordinances in furtherance of any general powers as enumerated in this section, and prescribe penalties for the

6

violation of the same not to exceed one hundred dollars, unless otherwise specifically provided by the general statutes.

Section 7-148(c)(10)(A) C.G.S. makes it clear that the penalties for the violation of a municipal ordinance are limited to $100.00

It is well-settled law in this State that a municipality's powers are limited to those granted to it by the State.

> "As a creature of the state, the ... [town, whether acting itself or through its planning commission,] can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation. *Baker v. Norwalk*, 152 Conn. 312, 314, 206 A.2d 428 [1965], and cases cited therein; *Bredice v. Norwalk*, 152 Conn. 287, 292, 206 A.2d 433 [1964]; *State ex rel. Sloane v. Reidy*, 152 Conn. 419, 423, 209 A.2d 674 [1965]. In other words, in order to determine whether [a] regulation ... was within the authority of the commission to enact, we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment. *Avonside, Inc. v. Zoning & Planning Commission*, 153 Conn. 232, 236, 215 A.2d 409 (1965); *Blue Sky Bar, Inc. v. Stratford*, 203 Conn. 14, 19, 523 A.2d 467 (1987)." (Internal quotation marks omitted.) *Builders Service Corporation v. Planning & Zoning Commission*, 208 Conn. 267, 274-75, 545 A.2d 530 (1988).

*Upjohn Co. v. Zoning Board of Appeals*, 224 Conn. 96, 100 (1992).

The defendants have not provided this Court with evidence of any enabling legislation that grants municipalities the power to arrest an individual and charge said person with a misdemeanor for violating its ordinance regulating sexually oriented businesses. Furthermore this Court was unable to find any statute, Public Act, Special Act or any other

7

enabling legislation that grants such power. The only enabling legislation that has been cited regarding the subject legislation is §7-148(c) C.G.S. and this statute does not grant such power.

> If the legislation is an ordinance, it must comply with, and serve the purpose of, the statute under which sanction is claimed for it. *Fairlawns Cemetery Assn., Inc. v. Zoning Commission*, 138 Conn. 434, 440, 86 A.2d 74.

> *Clark v. Town Council*, 145 Conn. 476, 482 (1958).

Whereas the State has not granted the defendants the power to charge individuals violating the subject ordinance with a misdemeanor, the defendants may not.

Although the defendants do not have the power to charge individuals with a misdemeanor, this does not mean that the entire ordinance is invalid.

The ordinance that is the subject of this action does not contain a "severability clause". However, section 1-13 of the Berlin Municipal Code is entitled "Severability of parts of Code." This section provides that:

> It is hereby declared to be the intention of the town council that the sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree to the court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code.

Although the section cited above appears to only address severability on constitutional grounds the court's analysis must go further. It is well-settled law in this state

8

that the Court's power to sever various parts of a statute is not a legislatively derived power, but an inherent judicial power.

> ". . . [T]he separability clause is a comparatively modern legislative device, the courts having separated statutes long before its innovation." . . . **[T]he authority of a court to eliminate invalid elements of an act and yet sustain the valid elements is not derived from the legislature, but rather flows from powers inherent in the judiciary.** Thus to say that a saving clause is 'indisputable evidence' of legislative intent to pass part of an act irrespective of void provisions is to put too great an emphasis on the mechanical inclusion of such provisions within an enactment. Separability clauses should be given reasonable consideration, but should not, at least under present usage, be paid undue homage." . . . "[T]he effect of a separability clause in an enactment is to replace a presumption that the statute was meant to be indivisible by a presumption in favor of separability. This latter presumption must be overcome by proof of considerations making evident the inseparability of the statute."

(emphasis added)

*Burton v. Hartford*, 144 Conn. 80, 89 (1956).

There is nothing in the subject ordinance that indicates that the Town intended the concerning misdemeanor provision to be unseverable from the remainder of the legislation. On the contrary, Section 1-13 of the Berlin Municipal Code indicates that the Town prefers severance of a portion of its legislation in order to protect the rest of it in the event of a successful legal challenge.

9

In light of the foregoing, the Court finds that the portion of the ordinance enabling a misdemeanor arrest for a violation of its provisions is ultra vires and therefore invalid, the remainder of said ordinance is valid and shall remain intact.[4]

*[signature]*
Richard A. Robinson, J
March 18, 2004

---

[4] The Court notes that individuals in violation of the subject ordinance may also be in violation of State statutes regulating similar or related behaviors, said individuals are subject to the penalty provisions of said statutes. The Court further notes that this decision is limited to the issues as raised by the plaintiff in their complaint.

10