FILED

2004 OCT 29 A 8: 59

U.S. DISTRICT COURT
BRIDGEPORT, CT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CENTERFOLDS, INC.
AND MARIO PIROZZOLI, JR.          :     NO.: 3:02CV2006 (WWE)
                                  :
v.                                :
                                  :
TOWN OF BERLIN, BONNIE L.         :
THERRIEN, IDA RAGAZZI, JOANNE     :
WARD, JOSEPH ARESIMOWICZ AND      :
LINDA CIMADON                     :     OCTOBER 28, 2004

### DEFENDANTS' SUPPLEMENTAL BRIEFING IN COMPLIANCE WITH THE COURT'S SEPTEMBER 29, 2004 ORDER

On September 29, 2004, this Court offered the parties an opportunity to brief the application of the Ninth Circuit's decision in <u>Dream Palace v. County of Maricopa</u> of September 27, 2004. Defendants will only address the issue of the standard of review in this brief. Defendants refer the Court to their previous discussion of standing and the plaintiffs' specific challenge to the licensing portion of the ordinance.[1]

In <u>Dream Palace</u>, the Ninth Circuit applied strict scrutiny to an ordinance, because the ordinance defined sexually explicit materials. Defendants submit that the Ninth Circuit took the wrong approach, by focusing on that which was prohibited, rather than the purpose of the ordinance.

---

[1] The <u>Dream Palace</u> court determined that prompt judicial review was available through the State Court or a §1983 action. Plaintiffs in this case did not raise the issue of prompt judicial review. To the extent that they do on supplemental briefing, the <u>Dream Palace</u> decision supports the Berlin ordinance.

As cited in defendants' prior brief, the case of <u>City of Los Angeles v. Alameda Books</u>, 535 U.S. 425 (2002) and subsequent Circuit Court decisions, confirm that where a community is concerned with the "secondary effects" of adult entertainment, the standards under <u>O'Brien</u> still apply even though the ordinances may regulate the activities of sexually oriented businesses. For example, this approach was used by the Ninth Circuit in <u>Center for Public Policy v. Maricopa Cty.</u>, 336 F.3d 1153 (9th Cir. 2003). The Court in Maricopa County stated:

> A regulation restricting the hours of operation of a sexually oriented business is quite obviously content based. 'Whether a statute is content neutral or content based is something that can be determined o the face of it; if the statute describes speech by content then it is content based.' <u>Alameda Books</u>, 435 U.S. at 448 (Kennedy, J., concurring). The Arizona Statute is content based on its face because whether an establishment falls within its parameters, and is therefore subject to sanction for violating the prohibition against operating during nighttime hours, can only be determined by reference to the content of the expression inside it. . . Because the statute is content based, Fair Public Policy argues that strict scrutiny should apply. Such argument is misplaced. ....
> The speech and expressive activity at issue here is one such exception; the content based/ content neutral distinction simply does not fit in this context. In fine, so long as the regulation is designed to combat the secondary effects of such establishments on the surrounding community. <u>Id.</u> at 1164.

The United States Supreme Court has expressed desire for local communities to be able to find solutions to battle the secondary effects of these establishments. There is no question the ordinance in this case and the other cases where challenges have been brought, are directed to sexually oriented businesses. Municipalities are attempting to regulate these businesses due to their secondary effects. However, as these particular types of businesses are

2

associated with these particular secondary effects, a town must, in the first instance, define what is being regulated. The U.S. Supreme Court has never said that in order for an ordinance that regulates nude dancing to be constitutional, it must be a general prohibition on nudity. Such a general prohibition would likely face a challenge based upon overbreadth. Such an ordinance stating, e.g. "All nude dancing is prohibited" would likely have been more palatable to the Ninth Circuit, because sexually oriented businesses would not be the only ones affected. However, in that instance, the ballet or bonafide artistic performances would also be prohibited and the ordinance would likely be stricken on overbreadth grounds. For example, similarly, in Triplett Grille, Inc. v. City of Akron, 40 F.3d 129,136 (6th Cir. 1994), the Sixth Circuit struck an ordinance that prohibited "all public nudity, including live performances with serious literary, artistic, or political value" because the city "failed to present evidence linking expressive nudity in high-culture entertainment to harmful secondary effects." J&B Entertainment, Inc. v. City of Jackson, 152 F.3d 362, 365 (5th Cir. 1998) (ordinance survived because of exception for persons "engaged in expressing a matter of serious literary, artistic, scientific or political value".); Giovani Carandola Ltd. v. Bason, 303 F.3d 507 (4th Cir. 2002) (generally applicable ordinance held overbroad because all activities regulated such as ballet did not have adverse secondary effects.)

    Thus, the Ninth Circuit's statement that "In defining establishments by reference to that which it prohibits, it amounts to an absolute ban on such activity

in Maricopa County. For these reasons, section 13(e) is unconstitutional." is erroneous. The Court characterized the ordinance as a total ban "on a particular kind of erotic expression." The Ninth Circuit's focus was too narrow in this regard.

In discussing strict scrutiny the Dream Palace Court failed to discuss its own case of Kev, Inc. v. Kitsap County, 793 F.2d 1053 (9th Cir. 1986) in which it took an opposite approach. In that case, the dancers were restricted from "fondling" during their performance. The Ninth Circuit applied intermediate scrutiny, by looking to the purpose section of the ordinance. The ordinance in that case no less targeted how the dancers provided their "message." Nonetheless, the Ninth Circuit determined that intermediate scrutiny applied because of the intent to regulate secondary effects.

Numerous commentators have noted that the issue of content neutrality vs. content discrimination in the nude dancing context is really a legal fiction. With all these ordinances, it is apparent that nude dancing is being regulated. The U.S. Supreme Court has continued this confusion by referring to content neutrality, rather than simply stating that with regard to these types of ordinances, which do discriminate based on content, they are still reviewed under intermediate scrutiny .See, Richland Bookmart v. Nichols, 278 F.3d 570 (6th Cir. 2002). Nonetheless, an ordinance is considered "content-neutral", even if it only regulates sexually oriented businesses, "if its purpose is to lessen undesirable effects attributable to those businesses." Jake's Ltd, Inc. v. City of Coates, 284

F. 3d 884 (8th Cir. 2002), citing <u>ILQ Investments, Inc., v. City of Rochester</u>, 25 F.3d 1413 1416 (8th Cir. 1994, cert. denied, 513 U.S. 1017 (1994); see also, <u>Fly Fish, Inc. v. City of Cocoa Beach</u>, 337 F.3d 1301 (11th Cir. 2003) ("Erie extends the secondary effects rationale of Renton beyond its zoning context to the regulation of expressive conduct. Under Renton, an ordinance may target adult entertainment establishments, and the nude dancing that occurs there, if it is aimed at reducing the negative secondary effects associated with these establishments.")

"Applying the Supreme Court precedents to this case, we can quickly isolate the critical inquiry. A ban on live nude dancing is content-neutral if its purpose is to combat harmful secondary effects, even though the ban 'has some minimal effect on the erotic message by muting that portion of the expression that occurs when the last stitch [of clothing] is dropped.'" <u>SOB v. City of Benton</u>, 317 F.3d 856 (8th Cir. 2003), citing <u>Pap's</u>, 529 U.S. at 294; see <u>ILQ Invs., Inc. v. City of Rochester</u>, 25 F.3d 1413,1416 (8th Cir. 1994).

> The Eight Circuit continued, :
>
> Here, the Ordinance states that its purpose is to "prohibit public indecency in order to deter criminal activity, to promote societal order and public health and to protect children," and it includes express findings that public indecency can increase criminal activity, including prostitution, disorderly conduct and sexual assault; expose children to an unhealthy and nurtureless environment; foster social disorder by disrupting the orderly operation of public events and public accommodations; and present health concerns in places of public accommodation and other public settings. <u>Id.</u>
>
> Such is the case with the Berlin ordinance.

In addition, several of the recent leading 1st Amendment challenges in the nude dancing arena have come from the Ninth and Seventh Circuits.[2] For example, in Renton, the Ninth Circuit had invalidated the ordinance at issue, but was reversed by the U.S. Supreme Court. Likewise, the Ninth Circuit in Alameda Books invalidated the ordinance at issue, and was again reversed. Barnes was an appeal from the Seventh Circuit's invalidation of that ordinance. The United States Supreme Court has upheld these ordinances under a secondary effects/ intermediate scrutiny analysis. Thus, it is unclear whether Dream Palace will stand.

The Dream Palace Court's comment that limiting the manner in which the dancers dance because it would detract from the message is insufficient. Limits have been upheld, even by the Ninth Circuit. Colacurio v. City of Kent, 944 F. Supp. 1470, 1476 (W.D. Wash.1996), affd. 163 F.3d 545 (9th Cir. 1998) ("patrons not entitled to maximum erotic experience possible".); Jakes, Ltd., supra, (same).

In addition, the Dream Palace court's suggestion that the prohibition on "simulating sex acts" is vague has been rejected by other courts. Dodger's Bar & Grill v. Johnson County Board, 32 F.3d 1436, 1444 (10th Cir. 1994); Farkas v. Miller, 151 F.3d 900 (18th Cir. 1998); Blue Moon Entertainment, Inc. v. Pinellas County, 97 F. Supp 2d 1134 (M.D. Fla. 2000).

---

[2] The Dream Palace court relied upon the Seventh Circuit decision in Schultz v. City of Cumberland, 228 F.3d 831 (7th Cir. 2000).

6

Likewise, there is no constitutional protection for viewing live sex acts, Recreational Dev. of Phoenix. v. City of Phoenix, 83 F. Supp.2d 1072 (Ariz. 1999), or engaging in them. Ellwest Stereo Theaters, Inc. v. Wenner, 681 F.2d 1243, 1248 (9th Cir. 1982); Paris Adult Theater, 413 U.S. 49, 67 (1973) ("conduct or depictions of conduct that the state police power can prohibit on a public street do not become automatically protected by the Constitution merely because the conduct is moved to a bar or live theater stage, any more than a 'live' performance of a man and woman locked in a sexual embrace at high noon in Times Square is protected by the Constitution because they simultaneously engage in a valid political dialogue."); Connection Distributing Co. v. Reno, 154 F. 3d 281, 289 n.8 (6th Cir. 1998)("the First Amendment also would not protect the right to engage in the depicted sexual conduct publicly").

In Farkas v. Miller, 151 F. 3d 900 (8th Cir. 1998), the Eighth Circuit reviewed the ordinance prohibiting simulated public performance of any sex act upon or in [a] place of business. Looking to the preamble and purpose behind the statute, the Eighth Circuit applied intermediate scrutiny and upheld the ordinance. It explained:

> Likewise, we find that section 728.5 is not unconstitutionally vague. In order to avoid a finding of vagueness, a statute must (1) be clear enough to provide a person of ordinary intelligence with notice of what conduct is prohibited, and (2) provide standards for those who enforce the prohibitions. See Grayned v. City of Rockford, 408 U.S. 104,108 (1972). None of the phrases the plaintiffs advance as impermissibly vague fails this test. Persons of ordinary intelligence would not be confused as to the coverage of the statute's "theater" exception, or the meaning of the terms "simulated sex act," "public performance," or "allows or permits." Mathematical precision is not required in legislation. See id. at 110.

Although there may be issues of interpretation regarding the meaning of a statute, that in itself does not give rise to a finding of unconstitutional vagueness. Moreover, "It will always be true that the fertile legal `imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question.'" Id. at 110 n. 15 (quoting American Communications Ass'n v. Douds, 339 U.S. 382, 412 (1950)) (alteration in original).

Prohibiting the dancers from engaging in actual or simulated sex acts while performing is an incidental restriction. Certainly, the experience of the patrons at Centerfolds will likely be more erotic than at other types of businesses. There are a number of elements that can be employed for the erotic performance, such as a strip-tease, music, lighting, use of smoke, singing/ and or talking to the crowd. These elements can sufficiently set the erotic mood. There are numerous movements the dancers could employ without engaging in sex acts or simulating them. The comparison made by the Dream Palace court to Elvis Presley's dance is hyperbole. Again, patrons are not entitled to the "maximum erotic experience" possible.

For these additional reasons, the defendants request that the Court enter judgment in their favor.

> DEFENDANTS,
>
> TOWN OF BERLIN, BONNIE L. THERRIEN, IDA RAGAZZI, JOANNE WARD, JOSEPH ARESIMOWICZ AND LINDA CIMADON
>
> By /s/ Melinda A. Powell
> Melinda A. Powell
> ct17049
> Howd & Ludorf
> 65 Wethersfield Avenue
> Hartford, CT 06114
> (860) 249-1361
> (860) 522-9549
> mpowell@hl-law.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 28th day of October 2004.

Norman A. Pattis, Esquire
51 Elm Street, Suite 409
New Haven, CT 06510

/s/ Melinda A. Powell
Melinda A. Powell