UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
CENTERFOLDS, INC.            :
and MARIO PIROZZOLI, JR.     :      3:02cv2006(WWE)
     Plaintiffs,            :
                             :
v.                           :
                             :
TOWN OF BERLIN, BONNIE L.    :
THERRIEN, IDA RAGAZZI,       :
JOANNE WARD, JOSEPH          :
ARESIMOWICZ and LINDA CIMADON,:
     Defendants.            :
```

RULING ON MOTION FOR SUMMARY JUDGMENT

This action concerns the defendant Town of Berlin's regulation of sexually oriented businesses ("SOBs") through a municipal ordinance. Specifically, the plaintiffs, Centerfolds, Inc., and its primary shareholder, Mario Pirozzoli, allege that 1) the ordinance is impermissibly content-based and overbroad in violation of the First Amendment of the United States Constitution; and 2) that the Town Manager, defendant Bonnie Therrien, and the four council members, defendants Ida Ragazzi, Joseph Aresimowicz, Joanne Ward, and Linda Cimadon, acted to deprive them of property without due process in violation of the Fourteenth Amendment. Plaintiffs request relief in the form of compensatory and punitive damages, an injunction to prohibit the enforcement of the ordinance against the plaintiffs, and a declaratory ruling finding that the ordinance is unconstitutional.

1

Defendants have moved for summary judgment on the complaint, arguing that no constitutional violation has occurred. Plaintiffs have filed an opposition to that motion, which the Court will construe as a cross-motion for summary judgment on the facial challenges to the ordinance's constitutionality.

The Court will also instruct the plaintiffs to move on any claims that have not been fully resolved by this decision. For the following reasons, defendants' motion for summary judgment will be granted in part and denied in part.

## BACKGROUND

The parties have submitted briefs, statements of facts, and supporting exhibits. These materials reveal the following relevant undisputed facts.

On October 19, 1999, the Berlin Town Council passed a moratorium on all new SOBs pending the Ordinance Committee's research and drafting of an ordinance to regulate such businesses. In June, 2000, the Ordinance Committee presented its proposed ordinance accompanied by a "Sexually Oriented Business Summary." The Summary cites the experiences of other municipalities in dealing with the negative effects of such businesses if permitted without regulation. It lists negative secondary effects, including "an increase in high-risk sexual activity and prostitution, resulting in higher risk of public exposure to communicable diseases and AIDS, property

2

devaluement, increased criminal activity, and a decline of retail

trade."  It states:

> The Town of Berlin, like other municipalities, is
> susceptible to the proven secondary effects of SOBs.  Of
> particular concern to Berlin is the existence of the Berlin
> Turnpike, a major commercial thoroughfare that bisects the
> Town.  The Berlin Turnpike has been a magnet for SOBs and,
> with its increased development, will continue to attract
> these types of businesses.  Other areas of Berlin have been
> and will continue to be targets of SOBs.

The Summary also provides an overview of First Amendment

jurisprudence and delineates the ordinance's underlying purpose

and intent:

> The Town Council for the Town of Berlin wishes to protect
> its citizens and community from the adverse secondary
> effects of the SOBs that have been experienced in other
> communities.  These harmful secondary effects include: (1)
> an increase in the risk of communicable diseases, including
> AIDS and Hepatitis B; (2) an increase in crime, especially
> sex-related crime; (3) decline in property value; and (4)
> unsanitary public places.  The The Town has a substantial
> government interest in protecting, preserving and promoting
> the health, safety and welfare of its citizens and those
> persons who patronize Berlin businesses and establishments.

On June 20, 2000, the Town Council passed the proposed

ordinance regulating SOBs.  In Section 1(e), the ordinance

declares that its purpose and intent is to "regulate sexually

oriented businesses to promote the health, safety and general

welfare of the residents of the Town and to establish reasonable

and uniform regulations of such businesses in order to reduce or

eliminate the adverse secondary effects of such sexually oriented

businesses. . . ."

3

In Section 4(a)(1), the Town's ordinance provides:

No licensee, operator or employee of a sexually oriented business shall perform or permit to be performed, offer to perform, or allow patrons to perform any live performance or conduct featuring any specified sexual activities on the licensed premises.

In subsection (gg) of Section 2, the ordinance defines

"specified sexual activities" as:

simulated or actual (1) showing of human genitals in a state of sexual stimulation or arousal, (2) acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sadomasochistic abuse, fellatio or cunnilingus, (3) fondling or erotic touching of another person's genitals, pubic region, buttocks or female breasts, (4) lap dancing, or (5) excretory function as part of or in connection with any of such activities.

In Section 5, the ordinance states:

No entertainer, either before, during or after a performance, shall have physical contact with any patron of a sexually oriented business while on a licensed premises.

The ordinance prohibits installation of "enclosed booths, cubicles, rooms or stalls within sexually oriented businesses, for whatever purpose, but especially for the purpose of providing for the secluded viewing of adult-oriented motion pictures or other types of adult entertainment."  Section 4(a)(3).

In Section 10, the ordinance provides that the Town Manager "shall be responsible for investigating, granting, denying, renewing, suspending and revoking all sexually oriented business applications and licenses. . . ."  The application is forwarded to the Chief of Police, Fire Marshal, Chief Building Official, Director of Health and Zoning Enforcement Officer for the

relevant compliance investigations.

Section 11 states that if a renewal application and fee are timely filed 30 days prior to expiration of the license, the Town Manager:

> shall, prior to the expiration of the previous license, renew the license for the same licensee at the same location for an additional one (1) year, unless (1) the random inspection reports in the licensee's file reveal uncorrected violations of this Ordinance or uncorrected violations of any fire, building, health or zoning codes or regulations, of which the licensee has received written notice, or (2) any condition under Section 10(d) herein that could have been grounds for denial of the original application has since become true.

A non-renewed licensee has 30 days to correct any noticed violations. However, Section 11 provides further that:

> in no instance shall a renewal be issued to a licensee who, within the one (1) year period of the previous license (1) has had two (2) or more material violations of this Ordinance, to which the licensee has received written notice, or (2) has had one (1) or more uncorrected material violations of this Ordinance pending for over thirty (30) days.

If a license is not "renewed for any violation of this Ordinance, no license shall issue for the same licensee for five (5) years from the expiration of the previous license." Pursuant to Section 13, a decision of non-renewal may be appealed at a public hearing. At the hearing, the aggrieved party may present evidence and cross examine Town Officials. Section 13(d) of the Town ordinance provides that after the public hearing, the Town Council "shall enter its vote to either sustain or overrule" the

5

Town Manager's licensing decision, and it "shall issue a written notice of its decision, stating the reasons therefore. . . ."  If the licensing decision is voted overruled, the Town Manager must reverse the previous licensing decision.

The decision of the Town Council may be appealed to the Superior Court within twenty (20) days of such written notice of such decision, and during the "pendency of any appeal of a non-renewal, suspension or revocation, the operations of the sexually oriented business may be maintained by the licensee, unless otherwise ordered by the Superior Court."

In July, 2002, defendant Bonnie Therrien, the Town Manager, made a Freedom of Information Act request to the State Department of Consumer Protection seeking investigative reports by the Liquor Division relative to "lap dances" and other sexual activities between employees and patrons occurring at Centerfolds, a licensed SOB located in Berlin.  Therrien reviewed the reports and the Town's ordinance.  She found that the activities documented in the report violated the ordinance's prohibitions against "specified sexual activities" and physical contact between entertainers and patrons.

By letter dated July 15, 2002, Ms. Therrien notified plaintiffs of the revocation of their business license pursuant to Section 12(b) of the ordinance that "the Town Manager shall revoke any license" where a licensee "knowingly allowed any live

6

performance or conduct featuring any specified sexual activities to occur on the licensed premises. . . ."  She also advised plaintiffs that, pursuant to Section 12(c), the license revocation was effective ten days after receipt of the notice, and that plaintiffs could contest the revocation by filing a written application for a public hearing with the Town Clerk within five days of the notice.

Centerfolds appealed the Town Manager's decision and a public hearing was held on August 27, 2002, at which hearing Centerfolds was represented by counsel.  During the pendency of this appeal process, the revocation of Centerfolds' license was stayed.  Accordingly, Centerfolds was not required to close its business despite the revocation.

Pursuant to Section 13(d) of the ordinance, after the public hearing, defendant Therrien moved for the council members to sustain the revocation.  Defendant council members Joseph Aresimowicz, Linda Cimadon, Joanne Ward, and Ida Ragazzi voted to sustain the revocation.  However, four other members voted to overrule the revocation.  The Town Attorney Timothy Sullivan interpreted the tie vote as "a failed vote to sustain" the revocation, and he recommended reinstatement of the license. Accordingly, Centerfolds' license has been reinstated.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Claims of facial invalidity may be resolved on summary judgment since they involve questions of law and do not often

8

present disputed issues of fact.  <u>Hang-On, Inc. v City of Arlington</u>, 65 F.3d 1248, 1253 (5th Cir. 1995).

<u>First Amendment Challenges</u>

Plaintiffs challenge the ordinance's prohibition against 1)"closed booths, cubicles, studios and rooms" for private viewings, 2) contact between performers and patrons, and 3) simulated sexual activities.  Specifically, in paragraphs 26 through 29, the complaint alleges that the ordinance is "irrational," "fails to distinguish between illegal acts, such as prostitution, and simulated acts of sexual conduct that violate no known laws, and which pose no threat of safety to any community or to anyone," and "is overbroad in that it prohibits innocent contact between performers and patrons."  In paragraph 28, plaintiffs allege that the "ordinance's description of enterprises composed of 'booths, cubicles, studios and rooms' bears no relation to the plaintiffs' enterprise, and are in fact a thinly veiled attempt to put the plaintiffs out of business by treating his business as of the same sort and type as those in which such illegal activities such as prostitution occur."

<u>Standing</u>

Defendants complain that plaintiffs lack standing to bring the asserted facial challenges.

The doctrine of Article III standing requires a litigant to demonstrate that (1) the litigant must have suffered actual or

threatened injury as a result of the illegal conduct of the
defendant, (2) the injury is fairly traceable to the challenged
action, and (3) the injury is redressable by a favorable
decision.  Valley Forge Christian College v. Americans United for
Separation of Church and State, 454 U.S. 464, 472 (1982).  The
overbreadth doctrine functions as an exception to "the general
prohibition on a litigant's raising another person's legal
rights. . . ."  Allen v. Wright, 468 U.S. 737, 751 (1984).  The
doctrine is based on the idea that "the very existence of some
broadly written laws has the potential to chill the expressive
activity of others not before the court."  Forsyth County v.
Nationalist Movement, 505 U.S. 123, 129 (1992).  To have
overbreadth standing, plaintiffs must have "a claim of specific
harm or a threat of specific future harm."  Bigelow v. Virginia,
421 U.S. 809, 816-817 (1975).

Defendants attack plaintiffs' standing to bring this
overbreadth challenge to the ordinance's "no touch" provision.
They argue that physical contact between a nude dancer and a
patron is not constitutionally protected speech.  Defendants rely
on Virginia v. Hicks, 539 U.S. 113, 120 (2003), wherein the
Supreme Court explained that a law's application to protected
speech must be substantial relative to the scope of the law's
legitimate applications before a court should apply the "strong
medicine" of overbreadth invalidation.

Here, defendants argue that no constitutionally protected speech will be chilled through enforcement of the ordinance based on innocent contact, as alleged in the complaint.  Although defendants cabin the word "innocent" to non-intentional or accidental conduct, the word is susceptible to encompass a broader range of conduct.  Accordingly, whether the overbreadth of the Berlin ordinance's "no touch" provision is sufficiently substantial to render the ordinance unconstitutional requires the Court to look to the merits of the claim.

Defendants also assert that plaintiffs lack standing on their challenge to the ordinance's prohibition against enclosed booths, cubicles, rooms or stalls, since that provision is not applicable to Centerfolds.  However, at present, Centerfolds cannot install such booths, cubicles, rooms or stalls and remain in compliance with the ordinance.  Accordingly, the ordinance is applicable to Centerfolds.

The Court finds that plaintiffs have satisfied the standing requirements for the facial challenge to the ordinance's restrictions on activities within a SOB.[1]

---

[1]Plaintiffs' opposition brief argues that plaintiffs have standing to bring a facial challenge to the ordinance's licensing scheme.  However, in their opening brief, defendants did not specifically move for summary judgment on plaintiffs' standing to bring a licensing scheme challenge or on the merits of such a claim.  Further, the complaint does not appear to plead a specific challenge to the ordinance's licensing scheme.  If plaintiffs are asserting a licensing scheme challenge, they should move for summary judgment on the merits of such claim.

Constitutionality of the Ordinance

Defendants argue that the ordinance is a valid time, place and manner regulation subject to intermediate scrutiny. Plaintiffs argue that it is an impermissible content-based ordinance subject to strict scrutiny.

A regulation of SOBs is constitutional if it (1) is a time, place and manner restriction rather than a total ban on adult entertainment; (2) targets the negative secondary effects of adult entertainment; and (3) satisfies intermediate scrutiny. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 49 (1985). The purpose and effect of the regulation must be to reduce the secondary effects rather than to reduce speech. City of Los Angeles v. Alameda Books, 535 U.S. 425, 445 (2002)(Kennedy, J., concurring).

Pursuant to intermediate scrutiny, a valid content-neutral[2] time, place, and manner regulation is permissible if it is narrowly tailored to serve a substantial governmental interest

---

[2]In Alameda Books, Justice Kennedy points out that the designation of secondary effects regulation as "content-neutral" is "something of a fiction." An ordinance that specifically targets SOBs is content-based on its face. However, it draws intermediate scrutiny because it is designed to decrease secondary effects rather than speech.

12

without unreasonably limiting alternative avenues of
communication.  Ward v. Rock Against Racism, 491 U.S. 781, 798
(1989).

    In contrast, if the regulation of sexually explicit
materials is aimed primarily at suppression of First Amendment
rights, it is thought to be content-based and so presumptively
violates the First Amendment and is subject to strict scrutiny.
Renton, 475 U.S. at 46.  A content-based restriction survives
strict scrutiny only on a showing of necessity to serve a
compelling state interest, combined with least restrictive narrow
tailoring to serve that end.  United States v. Playboy
Entertainment Group, Inc., 529 U.S. 803, 813 (2000).

    The ordinance's prohibition on installation of enclosed
booths, cubicles, rooms or stalls in SOBs is a valid time, place
and manner regulation.  It does not amount to a complete ban on
erotic expression, since it only regulates the setting of that
expression.  The Summary to the ordinance and the ordinance's
"Declaration of Policy" evince a purpose to protect the health,
safety and welfare of Berlin's residents.  These documents cite
to studies across the country finding a connection between SOBs
with booths, cubicles, studios and rooms, and prostitution, and
the spread of communicable diseases such as HIV and Hepatitis B,
and other unhealthful conditions.  Prior to enacting the
ordinance, the Town passed a moratorium on SOBs pending the

Ordinance Committee's study of experiences in several cities nationwide.

In enacting its regulations, the Town may rely on the experiences of other cities so long as that evidence is relevant to the problem addressed and the protected speech. <u>Renton</u>, 475 U.S. at 51. Further, in the absence of evidence to the contrary, the Town need only provide evidence that fairly supports the rationale for the ordinance. <u>City of Los Angeles v. Alameda Books</u>, 535 U.S. at 438.

Here, the evidence supports the defendants' assertion that the prohibition against booths, cubicles, rooms or stalls was enacted in order to ameliorate the cited secondary effects of prostitution, the spread of disease, and other unhealthful conditions. The Town has a substantial interest in preventing these cited secondary effects. <u>See</u> <u>Barnes v. Glen Theatre, Inc.</u>, 501 U.S. 560, 582 (1991).

However, the Court must further inquire whether the ordinance is narrowly tailored to serve such interest. A restriction on speech is narrowly tailored if its effect on First Amendment freedoms is essential to further the governmental interest that justifies incidental interference with First Amendment rights in the first place. In <u>Ward</u>, the Supreme Court explained that a narrowly tailored time, place, or manner regulation need not be the least restrictive or least intrusive

14

means to achieve the government's interest.  The requirement of
narrow tailoring is satisfied so long as the regulation promotes
a substantial government interest that would be achieved less
effectively absent the regulation, although the government may
not regulate expression in such a manner that a substantial
portion of the burden on speech does not serve to advance its
goals.  491 U.S. at 799.

In this instance, the Town's interest in curbing the
negative secondary effects associated with the undesirable
activities that occur within enclosed booths, cubicles, rooms or
stalls of a SOB would be achieved less effectively absent the
regulation.  Further, the burden on speech is limited to
expression that occurs in such enclosures rather than all erotic
expression, and thus the ordinance leaves open ample alternative
channels for communication.

The Court considers next the challenge to the ordinance's
prohibition against physical contact between entertainers and
patrons before, during or after a performance while on the
licensed premises as provided in Section 5(d)("No entertainer,
either before, during or after a performance, shall have physical
contact with any patron of a sexually oriented business while on
the licensed premises").  Plaintiffs argue that this provision is

unconstitutionally vague[3] in that it prohibits innocent contact between performers and patrons.

The ordinance addresses the negative secondary effects related to physical contact between entertainers and patrons as follows:

> Specified sexual activities often occur at unregulated sexually oriented businesses that provide live adult entertainment. Specified sexual activities include sexual physical contact between employees and patrons of sexually oriented businesses and specifically include "lap dancing" or manual or oral touching or fondling of specified anatomical areas, whether "clothed" or unclothed. Such casual sexual physical contact between strangers may result in the transmission of communicable diseases, which would be detrimental to the health of the patrons and employees of such sexually oriented businesses. . . .

The "no touch" provision does not effect a total ban on the erotic speech inside Centerfolds, since it restricts only physical contact between entertainers and patrons while on the licensed premises. The prohibition against physical contact is content-neutral, since it is directed at preventing the spread of communicable diseases. Thus, the Court reviews this provision according to intermediate time, place and manner analysis.

As previously discussed, the Town has a substantial interest

---

[3]The Court is not clear whether the plaintiffs intend to pursue the vagueness challenge to Section 5 of the ordinance, which plaintiffs argue in their opposition could give rise to a criminal offense pursuant to the ordinance's Section 14. Defendants counter that the ordinance's provision regarding penalties has been stricken and is void. St. Pierre v. Berlin, 2004WL772082 (Ct. Super. 2004) If the plaintiffs still maintain this challenge, the Court requests them to move for summary judgment on this claim.

16

in protecting public health.  Although the ordinance may burden some expressive contact between an entertainer and patron, the First Amendment does not guarantee the right to engage in protected expression "at all times and places or in any manner that may be desired."  Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981).  Any incidental burden placed on expressive conduct is permissible since Berlin's interest would be achieved less effectively absent the provision.

The Fifth Circuit has upheld "no touch" provisions, despite the argument that a touch may convey an essential message of the erotic dance through intentional but innocuous conduct.  Baby Dolls Topless Saloons, Inc. v. City of Dallas, 295 F.3d 471, 484 (5th Cir.), cert. denied, 537 U.S. 1088 (2002); Hang On, Inc. v. City of Arlington, 65 F.3d at 1253("The conduct at that point has overwhelmed any expressive strains it may contain.") Thus, the "no touch" provision is not unconstitutionally vague, since the provisions's "literal scope" concerns conduct, without reaching expression sheltered by the First Amendment.  See Smith v. Goguen, 415 U.S. 566, 573 (1974).

The prohibition against "live performance or conduct featuring any specified sexual activities on the licensed premises" presents a more troubling restriction on protected erotic expression.  "Specified sexual activities" are defined as "simulated or actual" sex acts enumerated by Section 2(gg).

17

Both the Ninth and Seventh Circuits have contemplated similar regulations of SOBs that prohibited "specific sexual activity" including simulated sex acts.  In <u>Schultz v.  City of Cumberland</u>, 228 F.3d 831, 846 (7th Cir. 2000), the Seventh Circuit applied strict scrutiny and struck down as unconstitutional an ordinance that restricted the particular movements and gestures of the erotic dancer, thereby impermissibly burdened the protected expression.  Most recently, in <u>Dream Palace v. County of Maricopa</u>, 384 F.3d 990, 1018 (9th Cir. 2004), the Ninth Circuit held that an analogous regulation constituted a total ban on protected expression and therefore merited strict scrutiny:

> In prohibiting dancers from engaging in "simulated sex acts," whatever they may be, the county appears to have proscribed the particular movements and gestures that a dancer may make during the course of a performance.  One is left to speculate as to what movements, precisely, a dancer may incorporate in a performance without running afoul of section 13(e), and yet still effectively convey an essentially adult, erotic, message to the audience.  The prohibition applies even if the dancer is at least partially clothed.  If Elvis' gyrating hips can fairly be understood to constitute a "simulated sex act," one can fully appreciate the potential scope of the restrictions placed on erotic dancers. . . .

Here, Berlin's ordinance purports to regulate SOBs without a complete censure on erotic expression.  However, Berlin's prohibition of "specified sexual activities" including simulation of certain sexual acts constitutes a total ban on protected expression by proscribing the movements and gestures that a

dancer may make in conveying the message of an erotic dance. Since the "dominant theme of nude dance is an emotional one" that conveys eroticism and sensuality, the ordinance "deprives the performer of a repertoire of expressive elements with which to craft an erotic, sensual performance and thereby interferes substantially with the dancer's ability to communicate her erotic message." Schultz, 228 F.3d at 847.  A government cannot constitutionally regulate erotic expression with such stringent restrictions that the expression no longer conveys eroticism. See Dream Palace, 384 F.3d at 1018.

Unquestionably, Berlin's ordinance states its primary purpose as the amelioration of the negative secondary effects of SOBs.  However, the government cannot hide behind a secondary-effects rationale, which does not by itself "bestow upon the government free license to suppress specific content of a specific message. . . ." Schultz, 228 F.3d at 845.  Otherwise, a regulation that had been formulated to prohibit a singled-out message would draw intermediate time, place and manner analysis based on a pretextual secondary effects rational.  See also R.A.V. v. City of St. Paul, 505 U.S. 377, 394 (1992)(questioning whether an ordinance that completely proscribes a specified category of speech can ever be considered to be a time, place and manner regulation directed at secondary effects).

Thus, this Court, applying strict scrutiny to the

19

ordinance's prohibition on specified sexual activities, must consider whether the provision is tailored "to serve a compelling state interest and is narrowly drawn to achieve that end." Simon & Schuster, Inc. v. New York Crime Victims Bd., 502 U.S. 105, 118 (1991).  Berlin has a compelling interest in ameliorating the negative secondary effects cited in the ordinance.  However, the provision as it stands is not narrowly drawn to achieve that end. It is not clear how the elimination of a performer's movements that involve no patron contact but that simulate sex acts will curb prostitution, the spread of communicable disease, crime, or declining property values and retail trade.

    Alternatively, even if reviewed pursuant to intermediate time, place and manner analysis, the prohibition of simulated "specified sexual activities" still fails the requirement of narrow tailoring.  It is unclear from the record that the amelioration of the targeted harmful secondary effects of SOBs would be achieved less effectively absent the proscription of a performer's movements that simulate sexual acts without any customer contact.  Further, as previously discussed, the ban on simulated sexual activity appears to nearly proscribe erotic dance, thereby burdening "substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S. at 799.

    Therefore, the Court concludes that the prohibition against

20

"specified sexual activities" as it is now written presents an unconstitutional burden on protected expression.

Due Process Challenge

Plaintiffs allege that violation of the Fourteenth Amendment's guarantee of due process of law occurred when defendant Therrien sought to revoke Centerfolds' license and defendants Aresimowicz, Cimadon, Ward and Razzi voted to sustain the revocation. Plaintiffs allege further that defendant Ragazzi "sought to deprive the plaintiff of due process of law by caucusing with defendants Aresimowicz, Cimadon, and Ward before any council meeting designed to hear an appeal of the town manager's revocation proceeding." Defendants argue that summary judgment is appropriate on the due process claim because plaintiffs did not suffer a deprivation of a property interest.

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. U.S. Const. amend XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 569-70 & n. 7 (1972). Thus, in order to sustain an action for deprivation of property without due process of law, a plaintiff must identify a property right, and show that the state actor has deprived plaintiff of that right without due process.

The fundamental requisite of procedural due process is the

21

opportunity to be heard.  See Boddie v. Connecticut, 401 U.S. 371, 377 (1971).  This opportunity must be granted within a meaningful time and manner.  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).  Further, the hearing must be "appropriate to the nature of the case."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

Here, it is undisputed that the revocation of Centerfolds' license was stayed pending a pre-deprivation hearing, and that the revocation decision was not sustained.  Thus, Centerfolds' license remains intact, and no deprivation of a property right occurred.

Plaintiffs argue that defendants could revoke or suspend the license without staying the administrative action pending the appeal, thereby forcing Centerfolds to close without due process of law.  However, this claim is contingent upon future events that may not occur at all, and therefore cannot form the basis of a procedural due process violation.  See Oriental Health Spa v. City of Fort Wayne, 864 F.2d 486, 489 (7th Cir. 1988).  The Court will grant summary judgment in favor of the defendants on plaintiffs' claim of a due process violation.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [doc. #19] is GRANTED in part and DENIED in part.  Construing plaintiffs' opposition as a motion for summary

22

judgment, the Court GRANTS summary judgment in plaintiffs' favor on the facial challenge to Section 2(gg)'s ban on simulated sexual acts, which the Court finds to be unconstitutional.

If additional facial constitutional challenges to the ordinance are sought, plaintiffs should file for summary judgment on those claims within 60 days of this ruling's filing date.

SO ORDERED.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE


Dated at Bridgeport, Connecticut this 20th day of December, 2004.